# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

―――

Argued January 18, 2005        Decided February 25, 2005

No. 03-7153

RICHARD LAW, ET AL.,
APPELLANTS

v.

CONTINENTAL AIRLINES CORPORATION, INC.,
APPELLEE

―――

Appeal from the United States District Court
for the District of Columbia
(No. 01cv01711)

―――

*Daniel S. Kozma* argued the cause and filed the briefs for appellants.

*Jon A. Geier* argued the cause and filed the brief for appellee.

Before: GINSBURG, *Chief Judge*, and GARLAND, *Circuit Judge,* and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* WILLIAMS.

WILLIAMS, *Senior Circuit Judge*: Continental Airlines generally promotes its pilots based on seniority. The Federal Aviation Administration's Age 60 Rule, however, bars airlines from employing pilots aged 60 years or older. 14 C.F.R. § 121.383(c). Because training to pilot new aircraft may take months, an airline might find itself training a pilot at considerable expense who would have little or no opportunity to use the acquired skills flying the airline's planes. To avoid that, Continental negotiated with its pilots union not to promote pilots aged 58 or older to positions requiring new training, but to give those pilots "pay protection"—the salary they would have earned on promotion. Under the resulting provision, 1998 Collective Bargaining Agreement ("CBA") § 9(3)(K)(2), Continental would "pay protect[]" a pilot aged 58 or older *not accepted* for promotion from the day the junior pilot who was awarded the slot assumed his new position *after* training.

Plaintiffs, three retired pilots not accepted for promotion at age 58 and thus covered by § 9(3)(K)(2), contrast that provision with another section of the CBA, § 3(12)(B), which gives pay protection to a pilot who is *accepted* for promotion but is leapfrogged by a junior pilot, starting from the day the junior pilot *begins* training. Plaintiffs brought an "opt-in" class action suit against Continental, requesting accelerated pay protection akin to that of § 3 rather than delayed pay protection under § 9. The district court deemed their claims time-barred and granted Continental's motion for summary judgment. We affirm.

\* \* \*

Viewed in the light most favorable to the plaintiffs, the relevant facts are as follows. Plaintiffs Law, Davis, and Krichbaum bid for captaincies that Continental made available in May 1999. Continental awarded the captaincies two months

later, selecting junior pilots because plaintiffs would retire fewer than two years after promotion. The junior pilots awarded bids over Law and Davis began training in September 1999, while Krichbaum alleges the awarded junior pilot in his case began training in December 1999. Davis bid unsuccessfully for another captaincy in January 2000, for which the awarded junior pilot began training that same month.

Under § 9(3)(K)(2) of the CBA, "[a] pilot . . . 58 years old or older on the effective date of a system staffing will not be awarded a higher status . . . but will be pay protected . . . on the *effective date of the bid*." (emphasis added). The bid's effective date is the date the junior pilot formally assumes his new position after completing training. Pursuant to § 9, Continental pay protected plaintiffs for the May 1999 openings beginning in June 2000, and pay protected Davis for the January 2000 opening beginning in January 2001. By contrast, a pilot accepted for promotion and covered by § 3(12)(B) "will be pay protected when a junior pilot is advanced to his new sub-base and status before a more senior pilot *is advanced* to the same sub-base and status on the same system staffing award." (emphasis added). Advancement to a new sub-base corresponds to the first day of pre-promotion training. Continental and the union eventually revised § 9 to match the timetable of § 3, but too late—December 2000—to apply to plaintiffs. Letter of Agreement 12.

On learning that Continental, in response to 1996 grievances, had pay protected two 58-year-old pilots from the day the promoted junior pilots began training, Law and Davis filed grievances, which Continental denied in February 2000. Law and Davis then filed charges of age discrimination with the Equal Employment Opportunity Commission ("EEOC") in January 2001 and April 2001, respectively. Krichbaum appears

to have filed no grievance; he attempted to file a charge at the EEOC in September 2001, but we are told that the EEOC rejected the filing because it repeated Law's charge. Law and Davis received right to sue letters, and plaintiffs filed a complaint in the district court in August 2001.

The court granted Continental's motion for summary judgment and dismissed the suit with prejudice. Plaintiffs' claims were time-barred, the court held, because plaintiffs did not file EEOC charges within 300 days of Continental's alleged discrimination, as the Age Discrimination in Employment Act ("ADEA") requires. 29 U.S.C. § 626(d)(2). The court found no discrimination within the statutory window because the two relevant sections of the CBA did not treat similarly situated employees differently. On appeal, we review the district court's grant of summary judgment de novo. *Apotex, Inc. v. FDA*, 393 F.3d 210, 216 (D.C. Cir. 2004).

\* \* \*

Plaintiffs revised their main argument between briefs. Compare Appellants' Brief at 21-24, with Reply Brief at 11-12. The apparently final version is that "each paycheck within the 300 day limitations period is separately actionable, but those falling outside of the limitations period are time-barred." Reply Brief at 12. Each paycheck under § 9 was discriminatory, they contend, because § 9 denies pilots 58 years or older the benefits of § 3's general rule of accelerated pay protection. Accordingly, Continental allegedly owes plaintiffs for the months within the ADEA window during which the awarded junior pilots were training but had not yet assumed their new captaincies. That period evidently comprises April and May 2000 for Law, and June to December 2000 for Davis. EEOC did not accept Krichbaum's attempted filing, and nothing in the record in any

event indicates he is entitled to relief within what would have been the ADEA window.

Plaintiffs rely principally on *Bazemore v. Friday*, 478 U.S. 385 (1986), which permitted black agricultural workers to recover from a state agency for salary discrimination that predated the violated statute. *Id*. at 390-91. "Each week's paycheck that delivers less to a black than to a similarly situated white is a wrong actionable under Title VII, regardless [whether] this pattern was begun prior to the effective date of Title VII." *Id*. at 395-96. Plaintiffs thus view each pay-unprotected paycheck within the 300-day window as discriminatory and separately actionable. They concede, in turn, that any deficient prior paycheck is a "discrete act," so that claims based on such acts are time-barred "even when they are related to acts alleged in timely filed charges." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002); see also *id*. at 111.

Continental regards *Bazemore* as inapt, arguing that the plaintiffs here were not "similarly situated" to the pilots who enjoyed § 3 pay protection. Continental also argues that any discrimination conceivably playing a role in the paycheck differential must have occurred in the time-barred period when the plaintiffs were not accepted for promotion. Continental cites in support *Taylor v. FDIC*, 132 F.3d 753 (D.C. Cir. 1997), for the reminder that "an untimely suit cannot be revived by pointing to effects within the limitations period of unlawful acts that occurred earlier." *Id*. at 765 (internal quotation marks and citation omitted). "Appellants," Continental complains, "attempt to make the *consequences* of the act (less pay) appear to be the discriminatory act, rather than the act that caused their pay to remain at the same level (the bid denial)." Appellee's Brief at 34-35 (citing *Delaware State College v. Ricks*, 449 U.S. 250, 258 (1980)). We agree with Continental's analysis.

According to *Morgan*, "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." 536 U.S. at 113. To call a paycheck a discrete act is simple enough, but plaintiffs' claims survive only if the disputed paychecks are "discriminatory." This would be true if Continental's seniority system were facially discriminatory. "There is no doubt, of course, that a facially discriminatory seniority system (*one that treats similarly situated employees differently*) can be challenged at any time." *Lorance v. AT&T Technologies*, 490 U.S. 900, 912 (1989) (emphasis added). "[T]he normal definition of discrimination [is] differential treatment of similarly situated groups." *Olmstead v. L.C. ex rel Zimring*, 527 U.S. 581, 613 (1999) (Kennedy, J., concurring).

Plaintiffs argue the CBA is facially discriminatory because § 9 "den[ies] pay protection to pilots each month solely because of their age." Appellants' Brief at 38. This is incorrect. By the CBA's terms, pilots enjoying pay protection under § 9 have "*not* be[en] awarded a higher status" (emphasis added), whereas those subject to § 3 have been "awarded" a promotion and will be "pay protected" until they are "advanced" to the promoted position. In other words, § 3 applies to a senior pilot who is awarded promotion and therefore ultimately will advance, and it bases pay protection not on the senior pilot's age, but on the fact that he will be advanced. Plaintiffs instead urge us to read § 3 as a "general rule" of accelerated pay protection, Appellants' Brief at 19, by which they evidently mean a rule extending accelerated pay protection to pilots who are *not* accepted for promotion. But such a reading violates the language of § 3.

Plaintiffs seek help from Letter of Agreement 12, which revised § 9 to render covered pilots "pay protected, in accordance with § 3." But, assuming the Letter's admissibility, its language only confirms that pilots under § 9 were previously

beyond § 3's reach. Sections 3 and 9 are therefore not facially discriminatory, and cannot in themselves render the paychecks within the 300-day window actionable.

The present case is thus quite distinct from *Bazemore* and our own decision in *Anderson v. Zubieta*, 180 F.3d 329 (D.C. Cir. 1999). In *Bazemore* the employing agency had "perpetuat[ed]" pay discrimination against blacks "*after* the [agency] became covered by Title VII." 478 U.S. at 395. And in *Zubieta* the plaintiffs attacked the "continued application" of a racially discriminatory policy, saying that the "policy currently 'treats similarly situated employees differently.'" 180 F.3d at 336 (quoting *Lorance*, 490 U.S. at 912).

Plaintiffs are thus left with an allegation that Continental discriminated against them by denying them advancement to new positions, which would have made them eligible for § 3's relatively early pay protection. But that act occurred in the time-barred period, and even if discriminatory, is like plaintiff flight attendant's forced resignation because of her marriage in *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 554 (1977). Although the resignation interrupted Evans's career with United and thus caused her to enjoy less seniority and lower pay and fringe benefits when she returned four years later to work for the airline, her claim that "the seniority system [gave] present effect to the past illegal act and therefore perpetuate[d] the consequences of forbidden discrimination" could not render those differentials currently actionable. *Id*. at 557-58.

*Morgan* does, however, contain one caveat that plaintiffs do not raise. It allows plaintiffs to use "prior acts as background evidence in support of a timely claim." *Morgan*, 536 U.S. at 113. Put another way, a prior act "may constitute relevant background evidence in a proceeding in which the status of a

current practice is at issue." *Evans*, 431 U.S. at 558. The exact scope of this caveat is unclear. Whatever the caveat's precise reach, such background evidence cannot suffice where plaintiffs have offered no evidence of discriminatory purpose other than (at most) the discrete time-barred decision not to advance them. To decide otherwise would completely undo *Morgan*'s insistence that "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." 536 U.S. at 113. Cf. *Lorance*, 490 U.S. at 901-06 (interpreting Title VI's seniority provisions to bar claim by female plaintiffs, demoted in an unbarred period as a result of an earlier, facially neutral modification of the employer's seniority system, a modification plaintiffs alleged had been adopted "in order to protect" male employees).

The judgment of the district court is

*Affirmed*.