WILLIAMS, Senior Circuit Judge,
concurring.
I write separately to underscore the precise distinction that we draw, following the Supreme Court to the best of our ability, between cases where a plaintiff can recover for the current consequences of a discrete discriminatory act in a time-barred period and cases where he or she may not. The distinction turns, as I see it, on whether one may reasonably characterize the defendant employer as applying a discriminatory salary structure in the unbarred period. See Maj. Op. at 452-54.
First, of course, we put aside hostile environment claims, which under National Railroad Passenger Corp. v. Morgan, 536 *457 U.S. 101, 113-15, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002), are treated as continuing violations because they involve “repeated conduct” that “cannot be said to occur on any particular day.” Id. at 115, 122 S.Ct. 2061. Further, because of then-cumulative character the plaintiff may not even have a claim until the behavior has persisted for some time. See Taylor v. FDIC, 132 F.3d 753, 765 (D.C.Cir.1997) (citing Dasgupta v. University of Wisconsin Board of Regents, 121 F.3d 1138, 1139 (7th Cir.1997)).
Among cases of discrete acts, those allowing recovery include Bazemore v. Friday, 478 U.S. 385, 106 S.Ct. 3000, 92 L.Ed.2d 315 (1986), and Anderson v. Zubieta, 180 F.3d 329 (D.C.Cir.1999). In Bazemore the state agency employers had integrated previously separate black and white agricultural extension services, but made only partial equalizing pay adjustments. 478 U.S. at 391, 106 S.Ct. 3000. The Court regarded their recent conduct as persistence in a discriminatory system, as it made clear in contrasting United Air Lines, Inc. v. Evans, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977). There the plaintiff flight attendant had been fired years before because she had married; after being rehired she complained that the resulting gap in her employment history was currently affecting her seniority. The Bazemore Court said that in Evans the “employer was not engaged in discriminatory practices at the time the respondent ... brought suit,” 478 U.S. at 396, 106 S.Ct. 3000 n. 6, thus implying that the Bazemore defendants were “engaged in discriminatory practices” in the unbarred period. And in Anderson the employer, the Panama Canal Commission, had started its complex and discriminatory classification system in the barred period and was applying precisely that system to plaintiffs in the unbarred period. 180 F.3d at 334-35.
On the other side are cases where a plaintiff cannot recover for a pay discrepancy in the unbarred period arising from an employer’s act of alleged discrimination in a barred period. The clearest example is Evans itself. At least in ordinary language, it seems impossible to describe the airline as currently applying a seniority policy that itself discriminated on the basis of marital status. The Court, after all, declared the system to be “neutral in its operation.” 431 U.S. at 558, 97 S.Ct. 1885.
In Lorance v. AT & T Technologies, 490 U.S. 900, 109 S.Ct. 2261, 104 L.Ed.2d 961 (1989), the Court applied the Evans model. Plaintiffs claimed that the employer’s onetime change in its method of computing seniority (moving from service at a plant to service in a specific type of work) had a disparate impact on female employees, affecting their promotion and demotion (and thus their pay) in the present. Id. at 902-03, 109 S.Ct. 2261. Although plaintiffs alleged that the shift had been intentionally discriminatory, the Court found then-claims barred because plaintiffs failed to show, as required under the Court’s cases for a successful challenge to a seniority system under § 703(h) of Title VII, 42 U.S.C. § 2000e-2(h), a “discriminatory intent” in the unbarred period. See Lorance, 490 U.S. at 908-09, 109 S.Ct. 2261. Again, without linguistic contortions it would be difficult to describe the employer’s ongoing system as discriminatory.
Most recently in Law v. Continental Airlines Corp., Inc., 399 F.3d 330 (D.C.Cir.2005), retired pilots requested “pay protection” — seniority-based compensation awarded pilots who were promoted to fly certain classes of aircraft but were not actually flying them — that they would have received had they not been (we assumed arguendo) discriminatorily denied promotion in a barred period. We found the *458 pilots’ claims barred in light of Evans. Id. at 334.
Morgan, the district court’s main ground for barring Shea’s claim, explicitly preserves Bazemore, which Morgan described as addressing “a discriminatory salary structure.” 536 U.S. at 112, 122 S.Ct. 2061. See also Maj. Op. at 453. It would be very odd to use such a term for the facts in Evans, Lorance or Law. The alleged wrong to each plaintiff or set of plaintiffs was an isolated act — dismissal in Evans, revision of seniority computation in Lorance, failure to promote in Law. The acts had consequences under the employer’s non-discriminatory seniority system, to be sure, but they could hardly be described as launching a two-class pay structure based on a forbidden criterion.
Shea, however, alleges just such a structure. See Complaint at ¶ 6(b) (“[A]t the time I applied for a position ... the Department was giving higher starting paygrades to minorities with the same qualifications I had, and lower starting paygrades to non-minorities.”); ¶ 6(c) (“Because of the ... discrimination noted [earlier], I am today receiving less pay with each paycheck than I would be if I had not been discriminated against .... This is a recurring violation of Title VII with the receipt of each paycheck.”). We can grasp the allegation most easily if we imagine Shea’s situation in a world with no inflation and no “time in grade” pay increases. In such a world, it appears from his complaint, the State Department’s current pay policy could reasonably be described as follows: “Everyone will be paid $XX,XXX except that (1) employees who have received special merit promotions or demotions will also receive whatever increments or decrements were prescribed at the relevant times, and (2) white employees hired in 1992 will receive five per cent less than they would otherwise.” This would look very much like Bazemore and Anderson. It is hard to construct a similar sentence to describe the policies being applied in Evans, Lorance or Law.
Distinguishing currently discriminatory pay structures from other, related employer policies is hardly an exact science. Were we to start from scratch, we might find more transparent criteria. But the distinction advanced above appears to reconcile the cases. We therefore follow it here.