**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**January 19, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**
_____

AARON J. DOUGLAS,

      Plaintiff - Appellant,

v.

GALE A. NORTON, Secretary, United
States Department of Interior,

      Defendant - Appellee.

No. 03-1407
(D. Colorado)
(D.Ct. No. 02-ES-1375)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **KELLY**, **ANDERSON**, and **O'BRIEN**, Circuit Judges.

_____

The district court dismissed Aaron Douglas' Title VII race discrimination

complaint without prejudice for lack of subject matter jurisdiction based on his

failure to exhaust administrative remedies. Douglas appeals. Exercising

jurisdiction under 28 U.S.C. § 1291,[1] we have wended our way through the

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[1] Although the district court dismissed Douglas' First Amended Complaint without prejudice, we have jurisdiction over this appeal because the dismissal disposed of the entire case. *See Amazon, Inc. v. Dirt Camp, Inc.*, 273 F.3d 1271, 1275 (10th Cir. 2001)

procedural maze presented by the arguments. As will be evident, "arcane"

understates the administrative process bearing on the resolution of this matter.

We will discuss the myriad arguments presented, but at bottom Douglas elected

the wrong process. Even if his filing deadline is equitably tolled to accommodate

his error (it appears to have been a good faith error), he waited too long to file his

administrative complaint.[2] Because Douglas failed to timely exhaust

administrative remedies, we conclude dismissal was warranted but, for the

reasons given, remand to the district court for dismissal with prejudice.

## I. Factual Background

Douglas, an African-American, holds a Master's Degree in Forestry and a

Ph.D. in Economics. In December 1986, he began working as a GS-9 Economist

for the United States Fish and Wildlife Service at the Midcontinent Ecological

Science Center in Fort Collins, Colorado. Between 1987 and 1994, Douglas was

promoted to a GS-13. In 1996, his position was transferred to the Biological

Resources Division of the U.S. Geological Survey, a division of the Department

of Interior.

---

("Although a dismissal without prejudice is usually not a final decision, where the dismissal finally disposes of the case so that it is not subject to further proceedings in federal court, the dismissal is final and appealable."). Moreover, the district court should have dismissed this case with prejudice.

[2] The addendum to this Order and Judgment contains a concise administrative time line.

Douglas is a member of the National Federation of Federal Employees and is covered by a collective bargaining agreement. The collective bargaining agreement sets forth a four-step grievance procedure.[3] The agreement states such procedure is to be the exclusive method for resolving employee grievances except "[a]n aggrieved employee affected by discrimination . . . may at his/her option raise the matter under a statutory appellate procedure or the negotiated grievance procedure, but not both." (R. App. at 92.) The collective bargaining agreement defines "grievance" to include any complaint by any employee "concerning any matter relating to the employment of any employee" but expressly excludes a complaint concerning "the classification of any position that does not result in the reduction in pay or grade for the employee . . . ." (*Id.* at 91.)

In June 1999, Douglas sought promotion to a higher classification. Because Douglas' position involved research, a Research Grade Evaluation Panel, consisting of five white males, an African-American male scientist and an African-American personnel specialist, rated Douglas' credentials pursuant to the Office of Personnel Management's Research Grade Evaluation Guide. On or about August 19, 1999, the panel issued its findings, recommending Douglas

---

[3] The grievance procedure requires the employee to file a written grievance with his immediate supervisor (Step 1), his second level supervisor (Step 2), and the Director of the Midcontinent Ecological Science Center (Step 3). If the employee remains unsatisfied at the conclusion of Step 3, the union has fifteen days to request arbitration on the employee's behalf (Step 4).

remain at a GS-13. Douglas informally learned of the decision on August 31, 1999.[4]

Thereafter, on September 1, 1999, Douglas contacted Fred Gonzalez, a counselor at the U.S. Geological Survey's Equal Employment Opportunity (EEO) office, stating he wished to file a discrimination claim concerning the Research Grade Evaluation Panel's decision. Douglas claims Gonzalez erroneously informed him he could file such complaint with either the EEO office or through the collective bargaining agreement's grievance procedure. A week later, on September 9, 1999, Douglas wrote a memo to the U.S. Geological Survey's EEO office alleging the Research Grade Evaluation Panel denied his request for re-classification based on his race. Specifically, he challenged the panel awarding him only twelve points (out of a possible twenty) for his "Qualifications and Scientific Contributions" because he had not published extensively in "first tier" economic journals. (*Id.* at 99-100.) Douglas claimed these "first tier" journals predominately published the works of white authors. As a result, he suggested a three member panel of university professors judge his publications based on the quality of their content rather than the quality of the journal in which they appeared. He also provided other suggestions for achieving a "color blind rating process." (*Id.* at 104.)

---

[4] Douglas received official notice of the panel's decision on September 26, 1999.

Between September and November 1999, Douglas and the U.S. Geological Survey attempted to settle the matter. On November 22, 1999, a mediation was held. Settlement negotiations were unsuccessful. Therefore, on November 29, 1999, Douglas filed a formal complaint with Gonzalez alleging the denial of his re-certification request constituted race discrimination. In this complaint, Douglas stated:

> As you [] recall, you recently checked the [collective bargaining agreement] to make sure [it] covered the use of the negotiated grievance procedure for discrimination complaints. . . . Page 15 of the [agreement] allows for the use of the negotiated grievance procedure as a venue for filing discrimination complaints. . . . I have previously forwarded several written documents to your office indicating the nature of the complaint and its relation to the [Research Grade Evaluation Panel's] finding that promotion was not warranted on the basis of my research achievements.
>
> However, I had not formally stated that I wish to go forward with the EEO compl[ai]nt. *This signed letter indicates that I do wish to go forward with a formal EEO complaint in accordance with the [collective bargaining agreement's] grievance procedure.*

(*Id.* at 107 (emphasis added).)

Thereafter, Douglas and the U.S. Geological Survey again attempted to settle the matter. On February 23, 2000, the Regional Director of the U.S. Geological Survey's Biological Resources Division sent Douglas a proposed settlement agreement. The agreement suggested, *inter alia*, that Douglas' classification be re-reviewed by a new Research Grade Evaluation Panel charged with concentrating on the scientific merits of Douglas' publications and that

Douglas be permitted to nominate at least one member of the new panel. Finding the proposed agreement unsatisfactory, Douglas filed a second grievance on March 3, 2000. In this grievance, he alleged the date of the incident as "February 23, 2000," and asserted he was withdrawing his first grievance and filing the new grievance based on additional information he received, namely that a white economist in California had a higher grade level than he did despite having significantly lower qualifications. (*Id.* at 110.) He also proposed a new classification procedure, in which his performance would be compared to other GS-13 or higher economists who had been given a Research Grade Evaluation Panel rating in the past five years.

On March 13, 2000, Douglas' supervisor, Berton Lamb, responded to Douglas' second grievance. Lamb stated he did not consider Douglas' March 3, 2000 grievance "new" because, like the first grievance, it alleged the U.S. Geological Survey's rating-promotion process was racially prejudicial. Lamb also informed Douglas that complaints concerning the classification of one's position not resulting in a reduction in pay or grade were expressly excluded from the scope of the negotiated grievance procedure. He further advised Douglas that classification decisions could be appealed by filing an appeal directly with the Office of Personnel Management or by filing an appeal first with the U.S. Geological Survey and then with the Office of Personnel Management. Attached

-6-

to Lamb's response was information providing guidance on filing a classification appeal.

On March 14, 2000, Douglas submitted a third grievance essentially reiterating the March 3, 2000 grievance. In this grievance, Douglas claimed "all white economists who have a doctorate degree in economics and have been full-time federal employees of the U.S. Geological Survey for more than 5-years are rated as GS-15 employees." (*Id.* at 134-35.) On April 3, 2000, Douglas Posson, Director of the Midcontinent Ecological Science Center, issued a memorandum to Douglas interpreting Douglas' March 14, 2000 grievance as an appeal of Lamb's denial of his grievance. Posson affirmed the denial, stating:

> I do not dispute your right to file a complaint involving discrimination using the negotiated grievance procedure. I am rejecting your grievance on the basis that your new grievance is based on the same matter(s) as your original grievance, which was filed in an untimely manner and subsequently withdrawn. . . . Secondly, even if your grievance had been filed in a timely manner the remedy you are seeking involves a classification process other than those allowed by [the Office of Personnel Management] and . . . the classification of a position is not a grievable issue.

(*Id.* at 141.) Posson also addressed Douglas' concern that he was receiving different information about the time frames for filing an EEO complaint. Posson informed Douglas there was a clear distinction between the filing of a discrimination complaint with the EEO office and the filing of a similar complaint under the collective bargaining agreement's grievance procedure. Because Douglas had elected to proceed under the latter, Posson advised Douglas that the

time frames outlined in the negotiated grievance procedure must be followed. Posson further advised Douglas that if he was not satisfied with Posson's decision, the union could request arbitration on his behalf.

The next day, April 4, 2000, Douglas notified Posson and Lamb that he wished to proceed to arbitration. In this notification, Douglas expressed his disagreement with Posson and Lamb's interpretation of the collective bargaining agreement. Specifically, he contended that although complaints concerning one's classification were excluded from the grievance process, this exclusion did not apply to classification complaints alleging discrimination. On August 17, 2000, the parties proceeded to arbitration.[5]

In the meantime, Douglas pursued another avenue of attack. On June 21, 2000, Douglas requested the Office of Personnel Management to determine whether his position was appropriately classified. He alleged his position was under-classified and his position should be evaluated using the GS-110 Economist standard rather than the Research Grade Evaluation Guide. On October 30, 2000, the Office of Personnel Management issued its decision, agreeing with Douglas that his position should be evaluated under the GS-110 Economist standard. Nevertheless, applying the GS-110 standard, the Office of Personnel Management decided Douglas' position was properly classified as a GS-13.

On November 23, 2000, the arbitrator issued his decision, denying Douglas'

---

[5] Pursuant to the collective bargaining agreement's grievance procedure, arbitration may only be invoked by the union or the employer. Therefore, only the union, the U.S. Geological Survey and the Department of Interior were parties to the arbitration proceeding. Of course, the union advocated Douglas' position.

grievance.  The arbitrator concluded:

> Based on the provisions of the contract, the testimony given at the hearing, and the arguments . . . of the parties, the Arbitrator has concluded that the grievance involves matters that are outside of his authority.
>
> . . . .
>
> It is clear that the Arbitrator does not have authority to decide a grievance involving "*the classification of any position that does not result in the reduction in pay or grade for the employee*".  In this case [Douglas] seeks to have the Arbitrator reclassify him to a higher rated job and to order that the employer give him backpay to 1991.  [The negotiated grievance procedure] expressly prohibits me from doing that.  There is no exception for discrimination cases. . . .  Finally the fact that [Douglas] telephoned the Arbitrator on November 17 and informed him that [the Office of Personnel Management] had denied his appeal on the classification matters is dispositive of this issue.  It would be irresponsible for me to order [Douglas] to be reclassified on this record based on the dismissal of the appeal by [the Office of Personnel Management].

(*Id.* at 172-74.)  The arbitrator's decision did not contain any notice of a right to appeal.

Several months later, in March or April of 2001, Douglas asked three resource economics professors to rate his position; they rated it as that of a GS-15 economist for the 1991-2002 period.  Armed with this new information, in April 2001, Douglas visited Carlos Villescas, Deputy Regional Director of the Equal Employment Opportunity Commission (EEOC), to determine how to proceed.  Douglas states Villescas informed him it did not matter how he proceeded and the new information could be introduced as an EEO complaint.  On May 23, 2001, Douglas contacted Ida Wilson, an EEO counselor.  On June 25, 2001, Douglas

followed-up this contact with a formal EEO complaint. It stated his claim was ongoing, with no date of origin. He further asserted he was being treated differently than his white counterparts. In particular, he claimed that while he was at least as well-qualified as any of the eight white male economists who were classified as a GS-15. He claimed this violated his rights under Title VII and sought back pay from January 1, 1992, alleging he had been performing at a GS-15 level since that date.

On November 8, 2001, the Department of Interior's EEO office denied Douglas' formal complaint. It concluded Douglas had elected to proceed under the negotiated grievance procedure and therefore he was precluded from filing an EEO complaint alleging the same matter. It also determined his complaint was untimely, as he had waited six months to contact an EEO counselor after receiving the Office of Personnel Management and arbitrator's decisions. Douglas appealed this decision to the EEOC. On June 3, 2002, the EEOC affirmed the EEO decision. The EEOC informed Douglas he had the right to file a civil action within ninety days of his receipt of the decision (*i.e.*, a right to sue letter).

## II. Procedural Background

On July 18, 2002, Douglas filed a pro se Title VII complaint against Defendant Gale Norton (Norton), Secretary of the Department of the Interior, in the United States District Court for the District of Colorado. On September 6, 2002, Douglas, then represented by counsel, filed his First Amended Complaint, alleging Norton denied him a promotion to a GS-15 based on his race in violation

of Title VII. On November 22, 2002, in lieu of an answer, Norton filed a Motion to Dismiss pursuant to Rules 12(b)(1) and (b)(6) of the Federal Rules of Civil Procedure. Norton argued Douglas elected the negotiated grievance procedure but failed to exhaust his remedies under that procedure because he did not appeal the arbitrator's decision to the EEOC pursuant to 29 C.F.R. § 1614.401(d) ("A grievant may appeal the final decision of the agency [or] the arbitrator [to the EEOC] . . . when an issue of employment discrimination was raised in a negotiated grievance procedure that permits such issues to be raised."). Additionally, Norton asserted Douglas could not rely on his June 26, 2001 EEO complaint because it was barred based on his election of the negotiated grievance procedure. On December 26, 2002, Douglas filed a response, claiming he made a good-faith effort to exhaust his administrative remedies in light of the faulty advice he received from the various agencies concerning his rights. He also asserted he was not precluded from proceeding with his EEO complaint by his election of the negotiated grievance procedure because that election was not a "true election" as his claim was not covered by that procedure. (*Id.* at 256.)

On July 11, 2003, the district court granted Norton's motion to dismiss and dismissed Douglas' First Amended Complaint with prejudice.[6] The district court concluded Douglas had opted to pursue his discrimination claim under the negotiated grievance procedure and this election barred him from filing an EEO complaint concerning that same discrimination. Because it was undisputed that

---

[6] Pursuant to 28 U.S.C. § 636(c), both parties consented to the exercise of jurisdiction by a magistrate judge.

Douglas had failed to exhaust his remedies under the negotiated grievance procedure, the court determined it lacked jurisdiction over Douglas' Title VII complaint and dismissal was appropriate. In doing so, it declined to consider Douglas' equitable arguments, finding waiver and estoppel were inapplicable because the exhaustion of administrative remedies requirement is jurisdictional. The district court's order was filed on July 14, 2003.

On September 12, 2003, Douglas filed a notice of appeal.[7] On October 21, 2003, Douglas filed a motion for reconsideration with the district court pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure.[8] In this motion, Douglas argued (1) his "election" of the grievance procedure was a nullity as his

---

[7] While normally a party in a civil case has thirty days from the date the judgment or order appealed from is entered, *see* FED. R. APP. P. 4(a)(1)(A), because an officer of the United States is a party to this case, Douglas had sixty days in which to file his notice of appeal. FED. R. APP. P. 4(a)(1)(B).

[8] FED. R. CIV. P. 60(b) provides:

> On motion and upon such terms as are just, the court may relieve a party . . . from a final judgment . . . for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud . . . , misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation.

complaint was not grievable and therefore, the only inquiry is whether he exhausted his remedies under the EEO procedure; (2) he exhausted his administrative remedies under the EEO procedure and this exhaustion was timely as his complaint alleged an ongoing violation, with a new act of discrimination occurring with the receipt of every paycheck; (3) he was not required to appeal the arbitrator's decision because such arbitration was permissive and such an appeal would have been futile as it was clear at that time that Douglas could not proceed under the negotiated grievance procedure; (4) the doctrine of equitable tolling applied as he was hampered by Norton's erroneous advice; (5) his good-faith efforts to exhaust his administrative remedies were sufficient to confer jurisdiction on the court; and (6) the court's dismissal should be without prejudice. On December 9, 2003, the district court granted Douglas' motion in part, agreeing with Douglas that the dismissal of the First Amended Complaint should be without prejudice; the court denied the remainder of the motion.

### III. Standard of Review

The district court dismissed this action under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction based on Douglas' failure to exhaust his administrative remedies under the negotiated grievance procedure. Normally, we review de novo dismissals for lack of subject matter jurisdiction under Rule 12(b)(1). *Davis ex rel. Davis v. United States*, 343 F.3d 1282, 1294 (10th Cir. 2003), *cert. denied*, 542 U.S. 937 (2004). However, in *Zipes v. Trans World Airlines, Inc.*, the Supreme Court held that "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit

in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." 455 U.S. 385, 393 (1982).[9] Here, because Douglas filed a complaint with the EEOC, albeit allegedly untimely, the district court erred in dismissing this case for lack of jurisdiction under Rule 12(b)(1). It should have analyzed this case under 12(b)(6) of the Federal Rules of Civil Procedure. And, because the district court considered evidentiary materials outside of Douglas' complaint, it should have treated Norton's motion as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.[10]

---

[9] Although some of our sister circuits have interpreted *Zipes* to mean exhaustion of administrative remedies under Title VII is not jurisdictional at all but rather a condition precedent or an affirmative defense subject to waiver, we have distinguished between the timely filing of a charge with the EEOC, which is not jurisdictional, and the failure to file such charge at all, which is jurisdictional. *Jones v. Runyon*, 91 F.3d 1398, 1399 n.1 (10th Cir. 1996). However, in *Jones*, we recognized that even after *Zipes*, some of our cases failed to make this distinction and continued to refer to the requirement of an EEOC filing as a jurisdictional requirement. *Id.* (citing *Knopp v. Magaw*, 9 F.3d 1478, 1479 (10th Cir. 1993); *Khader v. Aspin*, 1 F.3d 968, 970 (10th Cir. 1993); *Hill v. Ibarra*, 954 F.2d 1516, 1522 (10th Cir. 1992); *Johnson v. Orr*, 747 F.2d 1352, 1356 (10th Cir. 1984); *Harbison v. Goldschmidt*, 693 F.2d 115, 118 (10th Cir. 1982)). Nonetheless, a review of those cases demonstrates that none of them cited or acknowledged *Zipes*. Indeed, our cases citing *Zipes* have recognized that the failure to *timely* exhaust administrative remedies is not a jurisdictional deficiency but rather is similar in nature to a statute of limitations defense, which is subject to waiver and tolling. *See Harms v. IRS*, 321 F.3d 1001, 1009 (10th Cir. 2003); *Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320, 1325 (10th Cir. 2002); *Biester v. Midwest Health Servs., Inc.*, 77 F.3d 1264, 1267 (10th Cir. 1996).

[10] A motion to dismiss pursuant to Rule 12(b)(1), as opposed to Rule 12(b)(6), allows the district court to rely on evidence outside the pleadings without converting the motion to a motion for summary judgment. *See Davis ex rel. Davis*, 343 F.3d at 1296 ("When a party challenges the allegations supporting subject-matter jurisdiction, the court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts. In such instances, a court's reference to evidence outside the pleadings does not convert the [Rule 12(b)(1)] motion . . . to a Rule 56 motion

*See* FED. R. CIV. P. 12(b). Nevertheless, our review remains de novo.[11] *Rohrbaugh v. Celotex Corp.*, 53 F.3d 1181, 1182 (10th Cir. 1995).

Because exhaustion of administrative remedies is not jurisdictional in this case, the district court also erred in refusing to consider Douglas' equitable tolling arguments and in dismissing this case without prejudice. However, as we explain below, dismissal was appropriate as Douglas failed to timely exhaust his administrative remedies and his arguments in favor of tolling are unavailing.

## IV. Discussion

Douglas argues the district court erred in dismissing his case for lack of subject matter jurisdiction based on his failure to exhaust administrative remedies. Before addressing this argument, we turn to Norton's argument, raised for the first time on appeal, that the district court lacked jurisdiction over Douglas' complaint based on his failure to appeal the Office of Personnel Management's October 30, 2000 decision to the Office of Special Counsel.

### A. Failure to Appeal Office of Personnel Management's Decision to the Office of Special Counsel

Norton argues the district court lacked jurisdiction over Douglas' complaint

---

[for summary judgment]."） (citations and quotations omitted). Were this case one that could have been decided under Rule 12(b)(1), consideration of evidence outside the pleadings would have been proper without converting Norton's motion to dismiss to a motion for summary judgment.

[11] In the district court, both parties were provided the opportunity to and did present evidence on the exhaustion of administrative remedies issue. Indeed, the record appears complete on this issue. Hence, we need not remand this case or provide the parties any further opportunity to present evidence on the issue.

based on his failure to appeal the Office of Personnel Management's October 30, 2000 decision to the Office of Special Counsel. She asserts that although Douglas has always insisted his claim is a discrimination claim, the remedy he seeks—back pay from 1992 to 2000—requires re-classification. Therefore, Norton contends Douglas was required to exhaust his classification remedies, which included appealing the Office of Personnel Management's decision to the Office of Special Counsel. While we normally decline to address arguments raised for the first time on appeal, we address this argument because it challenges the court's jurisdiction. *Baca v. King*, 92 F.3d 1031, 1034 (10th Cir. 1996).

Under the Classification Act, 5 U.S.C. §§ 5101-15, each federal agency must classify every position under its jurisdiction in conformity with standards published by the Office of Personnel Management. 5 U.S.C. § 5107. An employee wishing to challenge his classification may request the Office of Personnel Management to decide whether a position is appropriately classified and if not, to re-classify it. 5 U.S.C. § 5112(a)(3), (4), (b); 5 C.F.R. § 511.603(a)(1). The "decision made by the Office [of Personnel Management] is final unless reconsidered by the Office. There is no further right of appeal." 5 C.F.R. § 511.612.[12] Despite the clear import of this regulation, cases from other circuits have concluded that a federal employee may seek investigatory review of

---

[12] Consistent with this regulation, the Office of Personnel Management's October 30, 2000 decision notified Douglas that "[t]here is no right of further appeal." (R. App. at 176.) Moreover, the materials Lamb provided to Douglas concerning classification appeals expressly stated: "[The Office of Personnel Management] appeal decision is binding. Employee has no further appeal options." (*Id.* at 129.)

an Office of Personnel Management's classification decision with the Office of Special Counsel and if the Office of Special Counsel decides the employee's complaint has merit, the Office of Special Counsel may petition the Merit Systems Protection Board for corrective action. *See, e.g.*, *Hinkel v. England*, 349 F.3d 162, 164-65 (3d Cir. 2003); *Towers v. Horner*, 791 F.2d 1244, 1247 (5th Cir. 1986).

We need not resolve the tension between these cases and 5 C.F.R. § 511.612. Douglas is not challenging the Office of Personnel Management's October 30, 2000 classification decision. Rather, he is claiming that the Research Grade Evaluation Panel's denial of his request for re-classification in August 1999, which the U.S. Geological Survey implemented, was based on his race. As Norton concedes, Douglas has always maintained that his claim is a race discrimination claim. So, the mere fact that the remedy he seeks, back pay from 1992 to 2000, requires him to be re-classified at a GS-15 is irrelevant.[13] Consequently, Douglas' failure to appeal the Office of Personnel Management's decision to the Office of Special Counsel did not deprive the district court of

---

[13] Indeed, if Douglas were to succeed on his Title VII claim, the court could order his promotion to a GS-15 with or without back pay, assuming Douglas would have been promoted but for the unlawful discrimination. *See* 42 U.S.C. § 2000e-5(g)(1), (2)(A); *Franks v. Bowman Trans. Co.*, 424 U.S. 747, 763 (1976) (holding that one of the central purposes of Title VII is to make a person whole for injuries suffered as a result of unlawful employment discrimination and district courts have broad equitable discretion, including ordering affirmative action, to effectuate this "make whole" objective) (quotations omitted); *Harbison v. Goldschmidt*, 693 F.2d 115, 116-17 (10th Cir. 1982) (reversing and remanding district court's order requiring employer to promote the plaintiff due to court's failure to determine that plaintiff would have been promoted but for the discrimination).

jurisdiction.

B.     Failure to Exhaust Administrative Remedies

Douglas argues the district court erred in dismissing his case for failure to exhaust his administrative remedies.  In support of this argument, he asserts: (1) his election of the negotiated grievance procedure was a nullity and therefore it is irrelevant whether he exhausted his administrative remedies under that procedure; (2) he exhausted his administrative remedies under the EEO statutory procedure by contacting an EEO counselor in September 1999, submitting an EEO complaint on June 25, 2001, and receiving a right to sue letter on June 3, 2003; (3) equitable tolling of the time limits for filing an EEO complaint applies because he was actively misled regarding his rights; and (4) his good faith effort to exhaust his administrative remedies was sufficient to confer jurisdiction on the district court.

Norton argues Douglas elected the grievance procedure and failed to exhaust his administrative remedies under that procedure by not appealing the arbitrator's decision to the EEOC.  She claims this election was not a nullity and Douglas cannot rely on equitable tolling because he insisted on using the grievance procedure despite being warned in March and April 2000 that his complaint was not cognizable under it.

Normally, a Title VII plaintiff satisfies the exhaustion requirement by filing a charge with the EEOC and receiving a right to sue letter.  *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999).  However, because Douglas is a member of a union covered under the Federal Labor-Management Relations Act (FLMRA), 5 U.S.C. §§ 7101-35,

-18-

special rules apply.  The FLMRA requires collective bargaining agreements between a union and federal agency employer to provide procedures for the settlement of employee grievances.  5 U.S.C. § 7121(a)(1).  It further mandates that these procedures, with limited exceptions, "be the exclusive administrative procedures for resolving grievances which fall within its coverage." *Id.*  One exception to this general rule is contained in § 7121(d), which states:

> An aggrieved employee affected by a prohibited personnel practice under [5 U.S.C. § 2302(b)(1)—prohibited discrimination] which also falls under the coverage of the negotiated grievance procedure may raise the matter under a statutory procedure or the negotiated procedure, but not both.

Section 2302(b)(1) of Title 5 prohibits discrimination based on race, color, religion, sex or national origin in certain personnel actions, including appointments, promotions, decisions concerning pay or benefits and "any other significant change[s] in duties, responsibilities, or working conditions."  5 U.S.C. § 2302(a)(2)(A)(I), (ii), (ix), (xi), (b)(1).  Therefore, an employee who alleges he is the victim of race discrimination may elect to proceed under either the negotiated grievance procedure or the statutory procedure, but not both.  Once an employee elects a certain procedure, it is irrevocable and the employee must exhaust the remedies provided by that procedure. *Johnson v. Peterson*, 996 F.2d 397, 399 (D.C. Cir. 1993); *Vinieratos v. United States*, 939 F.2d 762, 768-69, 772 (9th Cir. 1991); *Smith v. Kaldor*, 869 F.2d 999, 1005 (6th Cir. 1989).

However, this election only applies if the employee's complaint "falls under the coverage of the negotiated grievance procedure . . . ." 5 U.S.C. § 7121(d).  Here, § 7121(c)(5) and the collective bargaining agreement expressly

-19-

exclude from the scope of the grievance procedure any complaint concerning the classification of a position which does not result in the reduction in grade or pay of the employee. Consequently, because Douglas' discrimination complaint involved the classification of his position which did not result in a reduction in his grade or pay, it was not grievable and § 7121's election provision did not apply. Douglas' only recourse was to proceed under the EEO statutory procedure.

However, it is undisputed that Douglas elected the negotiated grievance procedure.[14] Hence, our dilemma—what effect does Douglas' election to proceed under the negotiated grievance procedure have on the exhaustion of administrative remedies requirement where such election was unavailable to him? We have unearthed no federal case law directly on point. However, in *Chai v.*

---

[14] Under 5 U.S.C. § 7121(d), "[a]n employee shall be deemed to have exercised his option under this subsection . . . at such time as the employee timely initiates an action under the applicable statutory procedure or timely files a grievance in writing, . . . whichever event occurs first." Under the EEO statutory procedure, an aggrieved employee is required to initiate contact with an EEO counselor within forty-five days of the alleged discriminatory action in order to attempt to informally resolve the matter. 29 C.F.R. § 1614.105(a)(1). In general, the counselor has thirty days to resolve the matter with the employee; if the matter is not resolved, then the counselor must inform the employee in writing of his right to file a formal discrimination complaint. 29 C.F.R. § 1614.105(d). Within fifteen days of receiving the counselor's notice, the employee must file a written formal complaint with the agency that allegedly discriminated against him. 29 C.F.R. § 1614.106(a), (b). Under the regulations, the employee is not deemed to have elected the statutory procedure until such formal complaint is filed. 29 C.F.R. § 1614.301(a). Here, although Douglas contacted an EEO counselor on September 1, 1999, and wrote a memo to the EEO office on September 9, 1999, alleging discrimination, such use of the pre-complaint process did not constitute an election of the statutory procedure. *Id.* ("An election to proceed under this part is indicated only by the filing of a written complaint; use of the pre-complaint process . . . does not constitute an election for purposes of this section.").

*Goldin*, the EEOC encountered a similar factual scenario. No. 05970016, 1998 WL 422036 (E.E.O.C. July 10, 1998). There, the employee initially filed a complaint under the applicable grievance procedure alleging he was denied a position based on his race and national origin. His grievance was ultimately denied by the arbitrator as nongrievable. A month later, the employee contacted an EEO counselor concerning the same alleged discrimination. He subsequently filed a formal EEO complaint with the EEOC. The EEOC denied the complaint based on the employee's untimely contact with the counselor and his previous election to proceed via the grievance procedure. The employee sought reconsideration, which the EEOC granted. The EEOC concluded that because the subject matter of the employee's grievance was not grievable, he did not make a true election to proceed through the grievance process. *Id.* at *2. In response to the employer's argument that the employee should have known his complaint was nongrievable because the employer informed him so during arbitration, the EEOC stated:

> If we were to deny [the employee's] right to proceed through the EEO process based solely on the argument that [the employee] should have known his [complaint] was ungrievable merely because the agency told him so, we would effectively be limiting [the employee's] right to elect between the grievance and EEO procedures based upon the agency's positions concerning the grievability of particular issues. Such a limitation would clearly produce untenable results and thus we decline to impose it in this case.

*Id.* at *3.

The EEOC further determined that the invalidity of the employee's election of the grievance procedure presented a sufficient basis for tolling the time period

for initiating the EEO procedure from the date of the arbitrator's ruling. *Id.* Because the employee had contacted an EEO counselor within forty-five days of the arbitrator's ruling, the EEOC concluded he had timely initiated the EEO process. *Id. See also Goddard v. Rubin*, No. 01974986, 1998 WL 1846229, at *1-2 (E.E.O.C. Nov. 6, 1998).

We need not decide whether Douglas' election of the grievance procedure was a nullity. Nor need we decide what effect the U.S. Geological Survey's informing Douglas that his grievance was nongrievable prior to arbitration had on Douglas' decision to continue with the grievance procedure.[15] Even assuming we disregard Douglas' "election" of the grievance procedure, and toll the time limits for Douglas to have initiated contact with an EEO counselor until the date of the arbitrator's decision on November 23, 2000, we still conclude Douglas failed to timely exhaust his administrative remedies.

The EEO procedure required Douglas to initiate contact with an EEO counselor within forty-five days of the date of the alleged discriminatory action. 29 C.F.R. § 1614.105(a)(1). Here, counting from the date of the arbitrator's decision, Douglas had until January 8, 2001, in which to contact an EEO counselor. He did not do so until May 23, 2001. While the forty-five day time limit for initiating contact with a counselor may be extended in certain

---

[15] We note that it was not until after Douglas had irrevocably elected the negotiated grievance procedure that the U.S. Geological Survey informed him that his grievance was not covered by the collective bargaining agreement.

circumstances,[16] none of these circumstances are present here. Nor do we discern anything in the record excusing Douglas from initiating such contact within forty-five days. Therefore, *Chai*, even if applicable, is distinguishable. There, the employee initiated the EEO process within forty-five days of learning his complaint was not grievable. *Compare Chai,* 1998 WL 422036 at *3, *with Hoffman v. Tanoue*, No. 01982239, 1999 WL 146642, at *2 (E.E.O.C. Mar. 3, 1999) (barring employee's claim because she did not initiate contact with EEO counselor within forty-five days of learning her claim was nongrievable).

Douglas attempts to avoid this result by relying on his initial contact with an EEO counselor in September 1999. He claims that because that contact occurred within forty-five days of the date of the Research Grade Evaluation Panel's denial of his re-classification request, this contact, combined with his June 25, 2001 complaint, satisfies the exhaustion requirement. This argument is unavailing. Although Douglas engaged in the pre-complaint EEO process in September 1999, he abandoned that process in favor of the grievance procedure. Even assuming the September 1999 contact constituted the requisite pre-

[16] 29 C.F.R. § 1614.105(a)(2) provides:

agency or the Commission shall extend the 45-day time limit . . . when the individual shows that he or she was not notified of the time limits and was not otherwise aware of them, that he or she did not know and reasonably should not have been known that the discriminatory matter or personnel action occurred, that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits, or for other reasons considered sufficient by the agency or the Commission.

complaint process for the June 25, 2001 complaint, Douglas still fails to explain why it took him seven months from the arbitrator's decision to file his formal complaint. *See supra* note 14 (setting forth time limits for filing formal complaint after initiating contact with EEO counselor).

Douglas also claims his June 25, 2001 complaint was timely under the continuing violation doctrine. Specifically, he argues that because discrimination in pay due to failure to promote is an ongoing violation, with a new act of discrimination occurring with the receipt of every paycheck, each paycheck he receives is a violation his civil rights and starts the clock for the filing of an EEO complaint. This argument is foreclosed by *National Rail Road Passenger Corporation v. Morgan*, 536 U.S. 101 (2002). There, the Supreme Court held that when an employee is the victim of a discrete act of discrimination—such as discharge, failure to promote, denial of transfer or refusal to hire—the employee must file an EEO charge within either 180 or 300 days of the date of the act or lose the ability to recover for it, even if such act is related to acts alleged in a timely filed charge. *Id.* at 113-14. Under *Morgan*, "plaintiffs are now expressly precluded from establishing a continuing violation exception for alleged discrete acts of discrimination occurring prior to the limitations period, even if sufficiently related to those acts occurring within the limitations period." *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1185 (10th Cir. 2003). Here, Douglas' complaint alleged a discrete act of discrimination, the denial of his request for re-

classification.[17]   Therefore, the date the Research Grade Evaluation Panel denied

his re-classification request (or considering equitable tolling, the date Douglas

received the arbitrator's decision) started the clock for filing a complaint with the

_____

[17] Douglas' reliance on *Bazemore v. Friday*, 478 U.S. 385 (1986) (per curiam), is misplaced.  There, in a pattern-or-practice case considering a discriminatory salary structure which paid African-American employees less than their white counterparts,  the Supreme Court held that "[e]ach week's paycheck that delivers less to a black than to a similarly situated white is a wrong actionable under Title VII, regardless of the fact that this pattern was begun prior to the effective date of Title VII."  *Id.* at 395-96 (Brennan, J., concurring); *see also Goodwin v. Gen. Motors Corp.*, 275 F.3d 1005, 1010 (10th Cir. 2002) (decided prior to *Morgan* and holding that in pay discrimination cases, "each . . . discriminatory salary payment constitutes a fresh violation of Title VII").  Since *Morgan*, several circuits have attempted to reconcile it with *Bazemore*, recognizing that *Morgan* relied on *Bazemore* and therefore did not overrule it.  *See*, *e.g.*, *Shea v. Rice*, 409 F.3d 448, 451-56 (D.C. Cir. 2005); *Reese v. Ice Cream Specialties, Inc.*, 347 F.3d 1007, 1009-14 (7th Cir. 2003).  These cases have drawn a distinction between pay discrimination claims, where each paycheck received is itself discriminatory, and claims involving discrete acts of discrimination which merely affect the employee's pay.  *Compare Shea*, 409 F.3d at 452, 454-55 (concluding employee's claim that employer assigned him a lower pay grade pursuant to a racially discriminatory diversity-promoting program was timely because each paycheck received was discriminatory), *and Reese*, 347 F.3d at 1013-14 (holding African-American employee's claim that he did not receive a raise that his white counterparts received was timely because each paycheck he received during the statutory period was a "fresh act of discrimination"), *with Law v. Continental Airlines Corp.*, 399 F.3d 330, 333-34 (D.C. Cir. 2005) (concluding employer's alleged discriminatory denial of promotions to employees was actionable at time of denial, and therefore each subsequent paycheck did not re-start statutory clock because each paycheck itself was not discriminatory).  *Cf. Elmenayer v. ABF Freight Sys., Inc.*, 318 F.3d 130, 134-35 (2nd Cir. 2003) (holding an employer's rejection of an employee's proposed accommodation of his religious observance requirements is "a single completed action when taken," even though "the *effect* of the employer's rejection continues to be felt by the employee for as long as he remains employed . . . .").  The latter scenario applies here.  Douglas has not contended that the GS pay system is discriminatory.  His claim is that the denial of his request for re-classification was discriminatory.  This denial is a discrete act of discrimination.  That this denial may presently affect his pay does not render the continuing violation theory applicable.

EEOC, not each new paycheck.

Lastly, Douglas asserts that even if he did not timely exhaust his administrative remedies under the EEO procedure, his good faith efforts to exhaust and to cooperate with the U.S. Geological Survey, the Department of Interior and the EEOC satisfy the exhaustion requirement. "The twofold purpose of the exhaustion requirement is to give notice of an alleged violation to the charged party and to give the administrative agency an opportunity to conciliate the claim in furtherance of Title VII's goal of securing voluntary compliance." *Woodman v. Runyon*, 132 F.3d 1330, 1342 (10th Cir. 1997). Consistent with these purposes, a "[g]ood faith effort by the employee to cooperate with the agency and the EEOC and to provide all relevant, available information is all that exhaustion requires." *Khader*, 1 F.3d at 971(quotations omitted). Conversely, when an employee refuses or fails to provide the agency information it needs to evaluate the merits of the employee's claim or the employee abandons his claim before an agency has reached a determination, he cannot be deemed to have exhausted his administrative remedies. *Id.* While Douglas' actions from September 1999 through the arbitrator's decision may have constituted a good-faith effort to exhaust, especially considering the morass of statutes and regulations involved, such efforts do not excuse the six-month delay between the arbitrator's ruling and Douglas' consultation with an EEO counselor on May 23, 2001.

Based on the above, we conclude dismissal of Douglas' First Amended Complaint was proper due to his failure to timely exhaust his administrative

remedies.

## V. Conclusion

**REMANDED** for dismissal with prejudice.

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge

| | |
|---|---|
| June 1999 | Douglas requests re-classification of his position. |
| August 1999 | Research Grade Evaluation Panel denies Douglas' request. |
| September 1, 1999 | Douglas contacts USGS EEO office. |
| September 9, 1999 | Douglas writes memo to USGS EEO office claiming the failure to reclassify his position was race based. |
| Sept. - Nov. 1999 | Settlement negotiations (unsuccessful). |
| November 22, 1999 | Mediation (unsuccessful). |
| November 29, 1999 | Douglas files formal complaint with USGS EEO office electing CBA grievance procedure. |
| Nov. 1999 - Mar. 2000 | More settlement negotiations (unsuccessful). |
| March 3, 2000 | Douglas files 2nd grievance (stating 1st grievance was withdrawn and supplanted by 2nd grievance, which contained new information). |
| March 13, 2000 | Lamb, Douglas' supervisor, denies grievance and advises Douglas: 1) the March 3, 2000 grievance is not new because it only alleged additional facts in support of his claim, not a different claim, and 2) his complaint was not a proper subject for a CBA grievance. |
| March 14, 2000 | Douglas files 3rd grievance with additional information. |
| April 3, 2000 | Posson, office director, treats 3rd grievance as an appeal from Lamb's Mar. 13, 2000 decision, affirms Lamb's decision and again advises Douglas the matter is not a proper subject of a CBA grievance. |
| April 4, 2000 | Douglas requests arbitration (under the CBA grievance procedure). |

Addendum A - Administrative Time Line

June 21, 2000          Douglas seeks review of his classification with the OPM.

August 17, 2000        Arbitration hearing.

October 30, 2000       OPM  decides Douglas' position was properly classified.

November 23, 2000      Arbitrator decides Douglas' claim is not subject to
                       arbitration.

May 23, 2001           Douglas contacts EEO counselor.

June 25, 2001          Douglas files formal EEO complaint.

November 8, 2001       DOI EEO office denies Douglas' formal complaint.

June 3, 2002           EEOC affirms decision of DOI EEO office and issues
                       "right to sue" letter.