# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
September 15, 2011

No. 10-31258
Summary Calendar

Lyle W. Cayce
Clerk

KATHLEEN WERNER,

Plaintiff – Appellant

v.

DEPARTMENT OF HOMELAND SECURITY, Janet Napolitano, Secretary,

Defendant – Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana
No. 2:10-CV-114

Before HIGGINBOTHAM, GARZA, and ELROD, Circuit Judges.

PER CURIAM:[*]

Kathleen Werner, a Transportation Security Administration (TSA) employee, appeals the dismissal of her hostile work environment and disparate treatment claims.[1]  Finding that her hostile work environment claim is time-

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] In the district court, Werner also filed a retaliation claim against the TSA, but she has not raised this claim on appeal.  Therefore, the issue is abandoned, and we do not consider it. *See Huckabay v. Moore*, 142 F.3d 233, 238 (5th Cir. 1998).

No. 10-31258

barred and that she has not proven her prima facie case for disparate treatment, we affirm.

## I.

Werner, a white female, was hired by the TSA to work as a supervisory transportation security officer in October 2002. After over four years of employment, Werner was demoted to a non-supervisory position. The TSA's official reason for the demotion was Werner's "continued failure to provide positive leadership and serve as a role model." The impetus behind the demotion was an incident occurring in August 2006, when Werner tried to take team photos to create posters for the New Orleans airport in honor of the one-year anniversary of Hurricane Katrina. The scene during the photo shoots was described by one witness as "a total loss of control," with some employees displaying "outlandish" behavior. As a supervisor, Werner was trying to line up team members to create orderly photos. During the disarray, she shouted to a group of predominantly African-American employees something to the effect of: "come on, y'all know you know how to line up." Various witnesses reported different phrasing, but at least some witnesses reported Werner as saying "y'all know y'all have been in a line up before." After receiving numerous complaints, TSA initiated an investigation.

During the investigation, Werner met with Assistant Federal Security Director (AFSD) Cheryl Johnson, where she told Johnson that "those people" were out to get her. Johnson later wrote a letter to Werner detailing the reasons for the demotion, specifically finding that Werner had violated TSA supervisor policies, including "[t]reat[ing] employees with dignity, respect and in a fair and equitable manner."

TSA's investigation included a review of Werner's personnel record, which contained prior counseling and discipline for making racially insensitive comments. Notably, in one of these incidents, AFSD Richard Rydinsky found

2

No. 10-31258

that Werner's comments "were not meant to harm or demean any minority" but rather "were local vernacular way of speaking." Nevertheless, because several screeners found the comments to be racially motivated, Rydinsky recommended counseling and made it clear to Werner that these types of comments were not appropriate. Indeed, in September 2004, Rydinsky warned Werner that "an immediate change in [her] conduct" was required.

In short, Werner's personnel record reflected her difficulty in diligently displaying the high level of racial sensitivity that was required of supervisors. Werner had received counseling and training but still was unable to act as needed. Thus, the line-up comment combined with Werner's record led the TSA to demote her.

Shortly afer the demotion, Werner met with an Equal Employment Opportunity counselor and asserted that she was subject to disparate treatment based on her race and gender when she was demoted. In her EEO meeting, Werner stated that she was harassed and repeatedly discriminated against by African-American employees. Werner also stated that whenever an African-American employee complained about her, an investigation was launched, despite the fact that her own complaints against other employees were never seriously considered. The EEO counselor could not resolve the problem, and in January 2010, Werner filed this lawsuit.

## II.

In dismissing Werner's claims, the district court relied on evidence outside of the pleadings. To support its reliance on outside documents, the district court cited one of our cases, which noted "approvingly" that other circuits have allowed a district court to consider "[d]ocuments that a defendant attaches to a motion to dismiss" as "part of the pleadings if they are referred to in the plaintiff's

complaint and are central to her claim."[2]  In this case, the Department attached nearly 100 pages of documents to its motion to dismiss, including depositions, none of which were explicitly referenced by the plaintiff in her complaint.  The district court's reliance upon these documents far exceeds what was intended in allowing evidence beyond the pleadings.[3]  Because the Department's motion to dismiss was, in the alternative, a motion for summary judgment, Werner had notice that the court might consider summary judgment, and she responded accordingly in her opposition memorandum, including submitting her own exhibits.  Thus, we may treat the district court's ruling as a grant of summary judgment in favor of the Department.[4]

We review a grant of summary judgment using the same standard of review as the district court.[5]  A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[6]  An issue as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[7]  In our review, we consider all evidence "in the light most favorable to the party resisting the motion."[8]

---

[2] *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000).

[3] *See Scanlan v. Texas A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003) (describing the limitations of *Collins* and reiterating that the district court may not "go outside the complaint").

[4] *See Bossard v. Exxon Corp.*, 559 F.2d 1040, 1041 (5th Cir. 1977) (noting that when a trial court considers evidence beyond the pleading in a motion to dismiss, the grant of that motion is to be treated as summary judgment under Fed. R. Civ. Pro. 56).

[5] *Dorsett v. Bd. of Trs. for State Colls. & Univs.*, 940 F.2d 121, 123 (5th Cir. 1991).

[6] Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

[7] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[8] *Trevino v. Celanese Corp.*, 701 F.2d 397, 407 (5th Cir. 1983).

No. 10-31258

III.

In order to exhaust the administrative remedies available under Title VII, a federal employee who believes he or she has been discriminated against must contact an EEO counselor within 45 days of the allegedly discriminatory act.[9] Werner contacted the counselor on January 19, 2007. Thus, for Werner's hostile work environment claim to survive, she must point to an incident of harassment that occurred after December 6, 2006.

In her motion opposing dismissal, Werner included her own affidavit that listed several incidents of harassment taking place between March 2003 and August 2004. However, Werner has not pointed to any act of harassment occurring between December 6, 2006 and January 19, 2007, meaning any complaints are time-barred. That the TSA investigated Werner's hostile work environment claim did not suspend the time limit nor indicate the government waived the defense of failure to timely exhaust administrative remedies. "In order to waive a timeliness objection, the agency must make a specific finding that the claimant's submission was timely."[10] Here, the TSA made no such finding, and summary judgment in favor of the Department is proper.

IV.

Absent direct evidence of discriminatory intent, Werner must prove her discrimination case using circumstantial evidence.[11] The first step is for the complainant to establish a prima facie case of discrimination. To do so, Werner must show that: (1) she is a member of a protected class; (2) she was qualified for her position; (3) she was subjected to an adverse employment action; and (4)

---

[9] *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002); 29 C.F.R. § 1614.105(a)(1).

[10] *Rowe v. Sullivan*, 967 F.2d 186, 191 (5th Cir. 1992).

[11] *See McDonnell Douglas Corp. v. Green Richard Ellis, Inc.*, 411 U.S. 792, 802 (1973).

No. 10-31258

similarly situated persons were treated more favorably than she was.[12]  Here, Werner failed to satisfy the fourth prong.

We have previously found that "employees who have different work responsibilities or who are subjected to adverse employment action for dissimilar violations are not similarly situated."[13]  Instead, we require that employment actions being compared between two employees must have been taken "under nearly identical circumstances," including "essentially comparable violation histories."[14]

Werner compares herself to several other employees but does not demonstrate that any supervisor had a similar violation history to her.  Werner points to one fellow supervisor who intentionally allowed a passenger to carry a knife on a plane but was not disciplined.  The record does not provide this supervisor's work history, but even if the circumstances were as Werner alleges, his violations are not "nearly identical" to Werner's, as this violation is vastly different from Werner's racial insensitivity.  In her interrogatory responses, Werner asserted that African-American employees signed a petition against a white male screening supervisor, Trevor Kiley, stating Kiley was a racist, but Kiley was not disciplined.  If Kiley had reports of racism in his personnel file, these violations may make him similarly situated to Werner, but Werner did not include his file in her opposition motion challenging summary judgment, nor do affidavits discuss Kiley's situation.

As Werner describes it, her complaint is not that she was demoted based on her disciplinary record when others with similar records were not demoted,

---

[12] *Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002).

[13] *Lee v. Kansas City Southern Ry. Co.*, 574 F.3d 253, 259–60 (5th Cir. 2009) (citing *Smith v. Wal-Mart Stores (No. 471)*, 891 F.2d 1177, 1180 (5th Cir. 1990)).

[14] *Id.* at 260.

No. 10-31258

but rather that (a) subordinates did not complain about other supervisors to the degree they complained about Werner and (b) complaints launched against Werner were investigated with greater vigor than the same complaints would have been investigated if made against other supervisors. As to the first point, the evidence suggests that Werner's subordinates were very short with her and that they were a difficult group to supervise. Affidavits indicate that racial tensions ran high during Werner's early days at the TSA, and Werner may have encountered greater difficulty than other supervisors. However, the items the subordinates complained about were still violations of TSA policy and were taken into account when demoting Werner.

Werner contends that those who launched complaints were motivated by racial animus against her. While this may be true, there is no evidence to suggest that Werner's supervisors had improper motivations in handling the complaints and issuing the reprimands that later were part of the reason for her demotion. Under the recent Supreme Court decision, *Staub v. Proctor Hospital*,[15] an employer may be liable for employment discrimination "if a supervisor performs an act motivated by . . . animus that is *intended* by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action."[16] Here, even if Werner could prove that the complaining screeners had improper motives, there is no evidence that the supervisors writing the violation reports acted with any racial animus.

Werner's second allegation—that complaints against her were treated differently than the same complaints asserted against other supervisors—may have traction if she offered evidence. However, she provides no evidence showing other supervisors, of any race, were reported to have made racially

---

[15] 131 S. Ct. 1186 (2011).

[16] *Id.* at 1194 (footnote omitted).

No. 10-31258

insensitive comments and were not disciplined.  Without this evidence, Werner has failed to prove that similarly situated employees were treated differently, and she is unable to make out her prima facie case.

## V.

Because Werner did not exhaust her administrative remedies in the hostile work environment claim and cannot establish her prima facie case of disparate treatment, we AFFIRM judgment in favor of the Department.