# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 24, 2023

Lyle W. Cayce
Clerk

————————

No. 22-30756

————————

STEPHEN J. KATZ,

*Plaintiff—Appellant*,

*versus*

CHRISTINE WORMUTH, *Secretary, United States Department of the Army*,

*Defendant—Appellee*.

———————————————————————

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 2:21-CV-132

———————————————————————

Before CLEMENT, ELROD, and WILLETT, *Circuit Judges*.

EDITH BROWN CLEMENT, *Circuit Judge*:[*]

A septuagenarian civilian doctor employed by the U.S. Army was removed from his position as Chief of Surgery and replaced by a military officer half his age. When he complained, the doctor was suspended pending an investigation into alleged misconduct, which stretched on until five months later, when the doctor resigned. The doctor sued for age discrimination and retaliation, but the district court granted summary

---

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

No. 22-30756

judgment to the Army. For the following reasons, we AFFIRM as to the age discrimination claim but REVERSE and REMAND on the retaliation claim.

## I.

## A.

In April 2016, the Army hired Dr. Stephen Katz as a civilian surgeon at Bayne-Jones Army Community Hospital in Fort Polk, Louisiana. He was 73 years old. In October 2016, he was appointed Chief of Surgery. Katz competed for the Chief of Surgery position against two other general surgeons, including Dr. Isaac Isaiah. The relationship between Katz and Isaiah ultimately deteriorated to the point where the two did not speak to each other.[1]

Katz remained Chief of Surgery until August 1, 2018, when he was replaced by Major Caton Simoni, a 37-year-old active-duty Army Medical Corps Officer. The decision to replace Katz (a civilian) with Major Simoni (an officer) was part of a hospital-wide policy change implemented by the new Deputy Commander for Clinical Services, Lieutenant Colonel Brian Adams, M.D., which was designed "to put uniformed personnel in the department leadership roles as career development opportunities for young Officers." Upon learning that he had been replaced as Chief of Surgery, Katz submitted a Memorandum for Record entitled "Hostile work environment" in which he asserted that being replaced as Chief of Surgery without any

---

[1] Katz, who is Jewish, claimed that Isaiah, who is Christian, was given preferential treatment due to the "pro-Christian" ideology that permeated the hospital's culture. Katz's religious discrimination claim is not before this court on appeal. Nonetheless, Katz's belief that Isaiah was given preferential treatment by, and was in cahoots with, hospital leadership is still relevant to the claims that *are* on appeal.

notice "represented a total lack of respect and an extension of the hostile environment in which [he] functioned."

On August 17, 2018—approximately two weeks after he had been replaced as Chief of Surgery and nine days after his internal complaint—the hospital's Credentials Committee convened an *ad hoc* meeting and voted to place Katz's clinical privileges in abeyance "due to allegations and reported concerns regarding [his] approach to surgical procedures, unprofessional conduct with staff, as well as concerns regarding patient safety and professional integrity." The Committee also placed Isaiah's clinical privileges in abeyance the same day "due to allegations and reported concerns regarding [his] surgical skill and practices, [his] performance within Department of Surgery, and concerns [his] surgical practices are outdated and potentially unsafe to patients." Adams was the Chairperson of the Credentials Committee.

The Notices of Abeyance sent to Katz and Isaiah stated that the abeyance was valid for 15 days, with an option to extend it to 30 days, while an investigation was conducted into the allegations, and that if the investigation was still ongoing after 30 days, the abeyance would automatically convert into a summary suspension. The Notices also explained that if the investigation found "substantial cause to proceed," the hospital's Credentials Committee would send the case to a more thorough "peer review." In response to the abeyance, on August 21, 2018, Katz submitted another Memorandum for Record, this one entitled "Summary of Inappropriate [B]ehavior from the Bayne-Jones Army Community Hospital Command Group," which, according to Katz, outlined the "overwhelming evidence that [he] was treated unfairly, and in a consistently hostile manner by Dr. Adams and the [hospital] command group."

No. 22-30756

An investigator was assigned to Isaiah's case on September 4, 2018, but an investigator was not assigned to Katz's case until September 17, 2018. Because the investigation into Isaiah was still ongoing—and the investigation into Katz had not even begun—when the 30-day window expired, their abeyances converted to summary suspensions on September 16, 2018. The investigations into Katz's and Isaiah's conduct were completed on October 3 and October 5, 2018, respectively. Both investigators recommended that the doctors' clinical privileges be reinstated. The Credentials Committee reviewed the investigators' reports during its October 10, 2018 meeting. As to Isaiah, the Committee voted to adopt the investigator's recommendation, and Isaiah's clinical privileges were reinstated the next day. But as to Katz, the Committee raised an additional concern—"potential fraudulent documentation on a postoperative patient"—that the investigator had not addressed. This concern about potentially fraudulent documentation dated back to a June 30, 2018 complaint that Isaiah had filed against Katz (Adams was CC'd on the complaint). The Committee therefore deferred voting on Katz's reinstatement until an investigation could be conducted into the potential fraudulent documentation. On October 16, 2018, shortly after learning about the Committee's decision, Katz contacted an Equal Employment Opportunity (EEO) counselor to initiate an informal complaint.[2]

---

[2] Under the established process, Katz had 45 days from each allegedly discriminatory event to initiate an informal complaint with an EEO Counselor. If, after 30 days, the EEO Counselor was not able to informally resolve the complaint, Katz would be permitted to file a formal EEO complaint. The Army would then investigate the allegations in the complaint and produce a report, after which Katz could either request a hearing by an EEOC administrative judge or a decision on the record from the Army. *See EEO Complaint Procedures*, U.S. ARMY, https://home.army.mil/benelux/index.php/about/G arrison/equal-employment-opportunity/eeo-program (last visited Oct. 11, 2023); *see also* 29 C.F.R. § 1614.

No. 22-30756

On November 7, 2018—with the investigation into the potential fraudulent documentation completed—the Committee met again to discuss Katz's suspension. The meeting minutes do not state whether the investigator substantiated the fraudulent documentation claim. Instead, the minutes note that the investigator "stated in his report that other complaints regarding Katz were leveled during the [investigator's] interviews" and that "[d]uring the committee discussion it came to light from a few members of the Credentials Committee that Dr. Katz has previously left patients without completing a handoff or report on a patient to the other surgeon on staff," *i.e.*, Isaiah. The Committee therefore voted to send Katz to peer review.

Katz's peer review was conducted on December 12, 2018. The review panel found "no significant concerns for patient care or patient safety" and noted that the "poor professional environment" between Katz and Isaiah was "likely the reason for the identification of the [potentially fraudulent documentation] in question." The panel therefore recommended that Katz's clinical privileges be reinstated. However, the Credentials Committee did not convene to discuss the review panel's recommendation until January 25, 2019—more than a month later. In the interim, Katz filed a formal EEO complaint on December 28, 2018—alleging a hostile work environment and discrimination based on race, age (76), national origin (Jewish), and religion (Jewish)—and resigned effective January 2, 2019. He then amended his EEO complaint on January 3, 2019.

Katz alleges that, prior to tendering his resignation, Colonel Marla Ferguson, the hospital's commanding officer, threatened that if Katz did not resign, she would "end [his] career." On January 25, 2019—three weeks after Katz's resignation—the Credentials Committee voted to reinstate Katz's clinical privileges. Katz was informed of his reinstatement on January 31, 2019.

B.

Following the EEO office's investigation of his complaint, Katz requested a hearing before an Equal Employment Opportunity Commission (EEOC) administrative judge. On August 4, 2020, the administrative judge ruled against Katz's claims on the merits, and the Army's EEO office adopted that decision on October 20, 2020.

On January 18, 2021, Katz filed suit in federal court asserting four causes of action: (1) age discrimination; (2) hostile work environment; (3) retaliation; and (4) religious discrimination. At summary judgment, however, Katz proceeded only upon his claims that the Army had: (1) removed him from his position as Chief of Surgery because of his age, in violation of the Age Discrimination in Employment Act (ADEA); and (2) retaliated against him, in violation of the ADEA and Title VII of the Civil Rights Act of 1964, by placing his clinical privileges in abeyance, converting his abeyance to a summary suspension, and delaying resolution of the investigation into his conduct, which culminated in his constructive discharge.

The district court dismissed Katz's claims concerning his removal as Chief of Surgery and the abeyance of his clinical privileges as time-barred by 29 C.F.R. § 1614.105(a)(1), which requires federal employees to "initiate contact with [an EEO] Counselor within 45 days of the date of the matter alleged to be discriminatory." The court rejected Katz's arguments that the Army had waived any timeliness objection by adjudicating his EEO complaint on the merits and that his claims concerning the abeyance were timely under the continuing violation doctrine because it was connected to his subsequent automatic suspension and further investigations. The court then dismissed Katz's retaliation claim for failure to exhaust his administrative remedies because he did not "check the box for reprisal in his EEO complaint."

No. 22-30756

Despite dismissing Katz's claims on timeliness and exhaustion grounds, the district court proceeded to analyze the merits of Katz's age discrimination and retaliation claims and, applying the familiar *McDonnell Douglas* burden-shifting framework, dismissed them once again. The court determined that Katz failed to establish a *prima facie* case of retaliation, and found that, while Katz had presented a *prima facie* case of age discrimination, the Army had come forward with a legitimate, nondiscriminatory reason for removing Katz as Chief of Surgery and Katz had not shown that this reason was pretextual. Katz timely appealed.

II.

We review *de novo* the district court's determination of whether Katz exhausted his administrative remedies. *Pacheco v. Mineta*, 448 F. 3d 783, 788 (5th Cir. 2006). The district court's grant of summary judgment on the merits of Katz's claims is also reviewed *de novo*, with all factual inferences viewed in the light most favorable to Katz. *Caldwell v. KHOU-TV*, 850 F.3d 237, 241 (5th Cir. 2017). We may affirm the district court's grant of summary judgment on any adequate ground supported by the record, even if it is different than the one on which the district court actually relied. *Montgomery v. Brookshire*, 34 F.3d 291, 297 (5th Cir. 1994). The court "should grant summary judgment when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Davidson v. Fairchild Controls Corp.*, 882 F.3d 180, 184 (5th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)). In the employment discrimination context, the purpose of summary judgment is to weed out "patently meritless cases." *Caldwell*, 850 F.3d at 241 (internal quotation marks and citation omitted).

III.

We begin with Katz's age-discrimination claim.[3] Under the federal-sector provision of the ADEA, all federal personnel actions must be "free from *any* discrimination based on age." 29 U.S.C. § 633a(a) (emphasis added). Accordingly, Katz establishes a triable ADEA claim against the Army if he shows a genuine dispute as to whether age played "any part" in the Army's decision to remove him from the Chief of Surgery position.[4] *See Babb v. Wilkie*, 140 S. Ct. 1168, 1174 (2020).[5] He can make this showing through direct evidence, circumstantial evidence, or both. *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 377 (5th Cir. 2010).

As he did before the district court, Katz contends on appeal that the Army's investigative report, which found that hospital leadership removed Katz from his position as Chief of Surgery as part of a hospital-wide decision "to put uniformed personnel in the department leadership roles as career development opportunities for young Officers," was direct evidence of age discrimination. We agree.[6] "A statement or document which shows 'on its

---

[3] Because we find that Katz's age-discrimination claim failed on the merits, we do not address whether it was also time-barred under 29 C.F.R. § 1614.105(a)(1).

[4] This is in direct contrast to ADEA claims against private-sector employers, which, given the statutory language prohibiting personnel actions taken "*because of* [an] individual's age," 29 U.S.C. § 623(a)(1) (emphasis added), require "but-for" causation. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009).

[5] Even if Katz's age-discrimination claim could survive summary judgment under the lower causation standard for federal-sector employees, because he cannot establish but-for causation, he is limited to "injunctive or other forward-looking relief" and "cannot obtain reinstatement, backpay, compensatory damages, or other forms of relief related to the end result of an employment decision." *Babb*, 140 S. Ct. at 1177–78. But we need not reach such remedy-related issues because Katz's age-discrimination claim fails.

[6] Disregarding Katz's contrary contentions, the district court adopted the Army's argument that the use of the word "young" in "young Officers" "refers to how much professional experience the officer has," not the officer's age, and therefore found that this was not evidence of age-based discrimination. But it was error for the district court to make

face that an improper criterion served as a basis—not necessarily the sole basis, but a basis—for the adverse employment action is direct evidence of discrimination.'" *Clark v. Champion Nat'l Sec., Inc.*, 952 F.3d 570, 579 (5th Cir. 2020) (alteration adopted) (quoting *Herster v. Bd. of Supervisors of La. State Univ.*, 887 F.3d 177, 185 (5th Cir. 2018)). The investigative report, which Adams confirmed at his deposition was accurate, shows on its face that age—an improper criterion—served as a basis (although not the sole basis) for removing Katz from his position as Chief of Surgery.

But our inquiry does not end there. Because Katz has direct evidence of age-based discrimination, "the burden shifts to [the Army] to 'prove by a preponderance of the evidence that the same decision would have been made regardless of the discriminatory animus.'" *Wallace v. Perform. Contractors, Inc.*, 57 F.4th 209, 218 (5th Cir. 2023) (quoting *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 992 (5th Cir. 2005)). The Army has carried this burden. It is clear from the record that hospital leadership made a hospital-wide decision to replace civilian department heads with military officers. To be sure, there was an impermissible preference for "young" officers, and if Katz were an older military officer who had been replaced by a young military officer, this could be a very different case. But Katz is not a military officer. Thus, regardless of his age, Katz would have been replaced as Chief of Surgery because he is a civilian.

For this same reason, Katz cannot satisfy the *McDonnell Douglas* pretext requirement, either. *See McDonnell Douglas Corp. v. Green*, 411 U.S.

---

this determination at the summary judgment stage; the court was required to draw all factual inferences in favor of Katz. *See Richardson v. Oldham*, 12 F.3d 1373, 1379 (5th Cir. 1994) ("Credibility determinations have no place in summary judgment proceedings. The district court chose to believe the defendants' evidence over the plaintiffs' and that was error." (citations omitted)).

792, 804 (1973). After determining that Katz had established a *prima facie* case, the district court correctly identified the Army's proffered justification for removing Katz from his position as Chief of Surgery—that department leadership roles were being converted from civilian positions to military positions—as legitimate and nondiscriminatory. The ultimate burden thus shifted back to Katz to establish, by a preponderance of the evidence, that this justification was pretext for age discrimination. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000). To show pretext, Katz needed to demonstrate either "disparate treatment" or that the Army's proffered explanation was "false" or otherwise "unworthy of credence." *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010) (citation omitted). The district court correctly determined that Katz failed to carry this burden. There is no evidence to suggest disparate treatment (*i.e.*, that other civilian department heads were allowed to remain in their positions while Katz was not). Nor has Katz shown that the Army's proffered explanation was false.

\* \* \*

Because the Army demonstrated a legitimate, non-discriminatory, non-pretextual reason for removing Katz from his position as Chief of Surgery, we AFFIRM the district court's judgment with respect to Katz's age discrimination claim.

## IV.

Next, we turn to Katz's retaliation claim. Before addressing the merits, we must consider two threshold issues: whether Katz administratively exhausted this claim, and whether the abeyance of Katz's clinical privileges can be considered as a basis for this claim.

A.

The district court held that "Katz did not timely exhaust his administrative remedies" with respect to his retaliation claim "because of his failure to check the box for reprisal in his EEO complaint." This was error. Our court's caselaw is clear: "we do not require that a Title-VII plaintiff check a certain box . . . to exhaust his or her administrative remedies." *Pacheco*, 448 F.3d at 792. Rather, "the plaintiff's administrative charge will be read somewhat broadly, in a fact-specific inquiry into what EEO[] investigations it can reasonably be expected to trigger." *Id.* Thus, if a retaliation investigation could "reasonably have been expected to grow out of" Katz's EEO complaint, then he has sufficiently exhausted his administrative remedies with respect to that claim. *See id.*

Katz filed his EEO complaint on December 28, 2018, and then amended it on January 3, 2019 to add additional factual allegations concerning his January 2, 2019 resignation. Although neither the original nor resubmitted EEO complaint checked the box for "reprisal" or used the word "retaliation," the resubmitted complaint set forth the same factual allegations that form the basis of Katz's retaliation claim in federal court: the "inappropriate" abeyance; the "endless and baseless" investigation that followed the abeyance; the additional investigation that was ordered despite the investigator's "recommend[ation] that [Katz] be reinstated with no clinical change"; and "[five] months of forced inactivity" (*i.e.*, suspension) "with no basis," all of which, Katz alleged, made it "clear that the intention was to dismiss [him] or force [him] to resign," which he did on January 2, 2019. An investigation into potential retaliation would be "reasonably expected" to "grow out of" these allegations. *See Williams v. Tarrant Cnty. Coll. Dist.*, 717 F. App'x 440, 445–46 (5th Cir. 2018) (per curiam) ("Despite [the plaintiff's] failure to check the retaliation box, or otherwise include the word 'retaliation' in her charge, it was sufficient to exhaust her retaliation

No. 22-30756

claim" because "[t]he administrative investigation which can reasonably be expected to grow out of [her] charge would examine whether she was engaged in a protected activity . . . and whether she was terminated as a result."(quotation marks and citation omitted) (alteration adopted)).[7]

### B.

Having determined that Katz administratively exhausted his retaliation claim, we must decide whether he can rely on the abeyance of his clinical privileges as a basis for this claim. Under 29 C.F.R. § 1614.105(a)(1), Katz was required to "initiate contact with [an EEO] Counselor within 45 days of the date of the matter alleged to be" retaliatory. Katz concedes that he "contacted an EEO counselor on October 16, 2018"—more than 45 days after "the placement of his clinical privileges in abeyance on August 17, 2018"—but contends that the Army waived its untimeliness defense and, in any event, the continuing violation doctrine applies.[8] We disagree with both assertions.

_____

[7] Katz argues that, even if he failed to exhaust the administrative remedies for his retaliation claim concerning conduct that occurred before he filed his EEO complaint— *i.e.*, prior to December 28, 2018—under *Gupta v. East Texas State University*, 654 F.2d 411, 413–14 (5th Cir. Unit A Aug. 1981), he was not required to exhaust his administrative remedies to assert a retaliation claim concerning post-December 28 activity, including the alleged threat Colonel Ferguson made that she would ruin Katz's career if he did not resign. However, because Katz amended his EEO complaint on January 3, 2019 to include allegations concerning this post-December 28 conduct, the *Gupta* exception would not apply. *See Eberle v. Gonzales*, 240 F. App'x 622, 628 (5th Cir. 2007) (per curiam) (holding that the *Gupta* exception does not apply where the alleged retaliatory conduct occurred before the filing of the EEO charge).

[8] In his reply brief, Katz asserts for the first time that the district court should have equitably tolled the 45-day requirement because Katz "was not aware of the timelines for filing, despite his due diligence." But it is well established that arguments raised for the first time in a reply brief are forfeited, *Dixon v. Toyota Motor Credit Corp.*, 794 F.3d 507, 508 (5th Cir. 2015), and therefore this argument need not be addressed.

Beginning with waiver, our court has established a bright-line rule that "[i]n order to waive a timeliness objection, the agency must make a specific finding that the claimant's submission was timely." *Rowe v. Sullivan*, 967 F.2d 186, 191 (5th Cir. 1992) (citing *Munoz v. Aldridge*, 894 F.2d 1489, 1494–95 (5th Cir. 1990)). Here, the Army made no specific finding of timeliness during the administrative adjudicatory process. Therefore, the district court correctly held that the Army did not waive its timeliness defense.

Katz argues that *Rowe*'s specific-finding requirement does not apply here because "*Rowe* involved actions of the [Equal Employment Opportunity] Commission, as opposed to the actions of the federal-employer." But our court has repeatedly and consistently applied this rule to the actions of the federal employer as well. *See, e.g.*, *Werner v. Dep't of Homeland Sec.*, 441 F. App'x 246, 249 (5th Cir. 2011) (per curiam) ("Here, the [Transportation Security Administration] made no such finding . . . ."); *Ulanoff v. Henderson*, No. 99-51025, 2000 WL 1835081, at *4 (5th Cir. Nov. 20, 2000) (per curiam) ("[T]he Post Office made no such finding here . . . ."); *Henderson v. U.S. Veterans Admin.*, 790 F.2d 436, 440–41 (5th Cir. 1986) ("[T]he Veterans Administration made a specific finding of timeliness . . . ."). And Katz's request that we "revisit [the] *Rowe* holding" can only be granted by the *en banc* court, not this panel. *See In re Henry*, 944 F.3d 587, 591 (5th Cir. 2019) ("Under the rule of orderliness, one panel of this circuit may not overturn another panel absent an intervening decision to the contrary by the Supreme Court or this court en banc." (quotation marks and citation omitted)).

As for the continuing violation doctrine, the Supreme Court has explained that it only applies to hostile work environment claims, not discrimination or retaliation claims. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114–15 (2002); *accord Hamic v. Harris Cnty. W.C. & I.D. No. 36*, 184 F. App'x 442, 447 (5th Cir. 2006) (per curiam) ("[P]ost-*Morgan*, a

No. 22-30756

plaintiff can only recover for retaliation to the extent that it occurred within the limitations period, that is, the continuing violations doctrine does not apply to retaliation."). So, even if, as Katz asserts, the time-barred abeyance was related to other retaliatory acts that occurred *within* the 45-day limitations period, the abeyance cannot be considered as a basis for his retaliation claim.[9]

## C.

Finally, we turn to the merits of Katz's retaliation claim, considering only those allegedly retaliatory acts that occurred within the limitations period. To establish a retaliation claim based on circumstantial evidence, Katz has the initial burden of establishing a *prima facie* case by showing that: (1) he engaged in protected activity; (2) he suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action. *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 945 (5th Cir. 2015). If Katz establishes a *prima facie* case, the burden shifts to the Army to show a legitimate, non-retaliatory reason for its decision, and, upon such a showing, the ultimate burden rests on Katz to demonstrate that the Army's reason is pretext for retaliation. *Id.* at 948. The district court concluded that Katz had not established a *prima facie* case because he could not show that he suffered an adverse employment action. We disagree.

---

[9] Although *Morgan* is a Title VII case, not an ADEA case, the circuits that have had the opportunity to consider the issue have uniformly applied the *Morgan* rule to ADEA claims. *See, e.g.*, *Campbell v. BankBoston, N.A.*, 327 F.3d 1, 10–11 (1st Cir. 2003); *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 239–240 (2d Cir. 2007); *Sherman v. Chrysler Corp.*, 47 F. App'x 716, 721 (6th Cir. 2002); *Law v. Cont'l Airlines Corp.*, 399 F.3d 330, 333–34 (D.C. Cir. 2005).

14

Beginning with the first element of Katz's *prima facie* case, the district court correctly identified that by contacting an EEO counselor on October 16, 2018, Katz engaged in protected activity. But as Katz points out, he also "engaged in various forms of protected opposition activity before resorting to his EEO contact beginning in October 2018"—namely, his August 8 and August 21 Memorandum for Record. *See Foster v. Ferrellgas, Inc.*, 834 F. App'x 88, 91 (5th Cir. 2020) ("Title VII protects informal complaints so long as the plaintiff 'reasonably believed' the challenged employment practice violated Title VII." (citation omitted)). This part of Katz's *prima facie* case is therefore satisfied.

As for the "adverse employment action" element, Katz was required to "show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Welsh v. Fort Bend Indep. Sch. Dist.*, 941 F.3d 818, 826 (5th Cir. 2019) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)), *abrogated on other grounds by Hamilton v. Dallas Cnty.*, 79 F.4th 494 (5th Cir. 2023). "[W]hen determining whether an allegedly retaliatory action is materially adverse, courts look to indicia such as whether the action affected job title, grade, hours, salary, or benefits or caused a diminution in prestige or change in standing among . . . coworkers." *Id.* (quotation marks and citation omitted).

Katz points to three actions which he claims, standing alone and viewed together, constituted materially adverse events: (1) his August 17, 2018 abeyance; (2) the prolonged investigation into his alleged misconduct, which extended his abeyance for more than five months; and (3) his forced resignation. The abeyance cannot be considered as part of this determination because, as explained above, it is time-barred. And even if we were to consider it, the abeyance, standing alone, is not a materially adverse event

because Katz continued to be paid during his suspension period. *See Davis v. Legal Servs. Ala., Inc.*, 19 F.4th 1261, 1266 (11th Cir. 2021) ("No Circuit has held that a simple paid suspension, in and of itself, constitutes an adverse employment action.") (collecting cases). However, Katz has presented a triable question of whether, by prolonging Katz's suspension by repeatedly adding new grounds for investigation, the Army crossed the line into an adverse employment action.

For five long months, Katz was unable to continue work as a general surgeon and was prohibited from seeing or operating on patients—a consequence that well might have dissuaded a reasonable doctor from making or supporting a charge of discrimination. Indeed, this court recognized as much in *McCoy v. City of Shreveport*, noting that when individuals are placed on leave pending an investigation into potential wrongdoing, those people are "indefinitely relieved of all duties and have little, if any, control over their reinstatement. Consequently, placement on administrative leave may carry with it both the stigma of the suspicion of wrongdoing and possibly significant emotional distress." 492 F.3d 551, 560–61 (5th Cir. 2007) (per curiam), *abrogated on other grounds by Hamilton*, 79 F.4th 494.[10] What is more, Katz spent this time worried that he would be permanently barred from practicing at the hospital as the investigations into his alleged conduct were ongoing—increasing anxiety, emotional distress, and the overall deterrent effect. Thus, Katz has raised a genuine dispute of material fact as to whether he was subject to an adverse employment action by virtue of the Army's prolonged investigation into his alleged misconduct.

---

[10] *McCoy*, 492 F.3d at 559, is also relevant for its abrogation of this court's holding in *Breaux v. City of Garland*, 205 F.3d 150, 158 (5th Cir. 2000)—that a four-month paid administrative leave was *not* an adverse employment action—in light of the Supreme Court's decision in *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006), which lowered the standard applicable to Title VII retaliation cases.

As for Katz's claim that he suffered the adverse employment action of forced resignation—*i.e.*, constructive discharge—the district court declined to consider it due to a failure to exhaust. But, as explained above, Katz *did* exhaust this claim, and we therefore consider its substance.

"In order to establish a prima facie case of retaliation based on constructive discharge, [a plaintiff] 'must prove that working conditions would have been so difficult or unpleasant that a reasonable person in [his] shoes would have felt compelled to resign.'" *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 439–40 (5th Cir. 2005) (quoting *Landgraf v. USI Film Prods.*, 968 F.2d 427, 429–30 (5th Cir. 1992)). To determine whether a "reasonable employee" would feel "compelled to resign," we consider whether the plaintiff suffered:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status.

*Id.* at 440 (quoting *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001) (alteration adopted)). Here, Katz alleges that he was removed from his position as Chief of Surgery (a demotion), had his clinical privileges placed in abeyance (a reduction in job responsibilities), was reassigned to report to Major Simoni (a younger supervisor), and had his career threatened if he refused to resign (harassment calculated to encourage resignation). Thus, Katz has raised a genuine dispute of material fact as to whether he was subject to a constructive discharge adverse action.

With adverse action established for the purpose of summary judgment, the remaining element of Katz's *prima facie* case is causation,

which the district court did not reach. On appeal, as before the district court, the Army's argument on this issue is that "[t]here is no probative evidence whatsoever to support a retaliatory motive on the part of Dr. Adams." But a causal connection can also "be established simply by showing close enough timing between the two events." *Garcia v. Pro. Cont. Servs., Inc.*, 938 F.3d 236, 241 (5th Cir. 2019). This court has repeatedly held periods of a few months between protected activity and adverse action sufficient to satisfy causation in a *prima facie* case. *See, e.g.*, *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 219 (5th Cir. 2016) (holding two months sufficient to show causal connection); *Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001) (four months). As Katz explained to the district court, Katz's protected activities and the adverse actions against him occurred in close succession. On August 21, 2018, following the abeyance, Katz submitted a Memorandum for Record concerning alleged unfair treatment. Within the next two months, Katz's abeyance was allowed to lapse into a suspension (September 16) and his reinstatement was delayed pending an investigation into new allegations (October 10). Then, within a month of Katz contacting an EEO counselor to initiate an informal complaint on October 16, Katz's suspension was further extended, and he was sent to peer review (November 7). Finally, within days of Katz submitting his formal EEO complaint on December 28, Katz claims that he was threatened with ruination if he did not resign. The close timing between these protected activities and adverse events is sufficient to establish causation and complete Katz's *prima facie* case.

\* \* \*

Because Katz established a *prima facie* case of retaliation, the district court erred in granting the Army summary judgment on this basis. We therefore REVERSE the district court's judgment with respect to Katz's retaliation claim and REMAND for the district court to consider whether

No. 22-30756

the Army has put forward a legitimate, non-retaliatory, non-pretextual reason for its adverse employment actions and, if not, to proceed to trial.