# United States Court of Appeals for the Fifth Circuit

---

No. 23-60106

---

United States Court of Appeals
Fifth Circuit

**FILED**

April 8, 2024

Lyle W. Cayce
Clerk

Candace E. Taylor,

*Plaintiff—Appellant*,

*versus*

Denis McDonough, *Secretary, U.S. Department of Veteran Affairs*,

*Defendant—Appellee*.

---

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 1:21-CV-294

---

Before King, Ho, and Engelhardt, *Circuit Judges*.

Per Curiam:[*]

Candace E. Taylor appeals the district court's summary dismissal of her claims of sexual harassment against her former employer in violation of Title VII of the Civil Rights Act of 1964. Taylor's claims arise from instances of sexual harassment occurring between March 2017 and October 2017. The district court concluded that a subset of Taylor's claims was untimely, and that the remaining claims were defeated by the Department of Veteran

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 23-60106

Affairs' *Ellerth*/*Faragher* defense to vicarious sexual harassment liability. We find no error in the district court's conclusions and AFFIRM.

## I.

In April 2013, Plaintiff-Appellant Candace E. Taylor began working at the Department of Veteran Affairs ("VA"). She was originally hired as a Medical Administrative Support ("MAS") Assistant, a position which she maintained from 2013 to 2017. In her capacity as an MAS assistant, Taylor worked with William Hardy, a Program Manager in the VA's Equal Employment Opportunity ("EEO") office. During this time, Taylor agrees that her personal interactions with Hardy were "very respectful" and professional.

In March 2017, Taylor transitioned into a new role as the EEO Program Assistant and began directly reporting to Hardy. As part of her job duties, Taylor received and acknowledged the VA's internal memoranda and policies about reporting sexual harassment, instructed other employees on how to file sexual harassment claims, and taught other employees that the 45-day deadline for filing such claims was a "firm" deadline.

Taylor alleges that shortly after her transition, Hardy began sexually harassing her. Taylor testified that in April 2017, Hardy revealed to her that he was "sexually frustrated," and began commenting on her "pretty physique." Taylor also states that around the same time, Hardy "pressed his body up against [her]" and told her that she had "very nice jugs." Additionally, Hardy sent Taylor a series of text messages which stated, *inter alia*, "R u getting dress for work . . . I guess you have clothes on 🤢 " and "I ask[ed] to kiss your jugs that has not happened."

On May 24, 2017, Hardy sent Taylor a photograph of himself via text message, accompanied by the caption, "I look great . . . Get FaceTime and

you could see more lol . . . Thank you." Also in May, while at a work event, Taylor alleges that Hardy told her that "he was just tempted to take [Taylor] into the bathroom to have sex," and he let her know that he was allergic to latex condoms as an "FYI." Although Taylor testified that she knew how to report these alleged harassment incidents in accordance with VA policies, she explained that she did not do so because she feared retaliation and believed Hardy would not be disciplined.

Over the next three months, from June to August, Taylor testified that Hardy engaged in "bad management" and continued to make inappropriate comments to her, such as, "[H]opefully I'll get lucky one of these days." However, Taylor did note that the comments were not "as aggressive as it was before" and did not involve "direct contact" like before. And, when asked if she ever reported Hardy's behavior to anyone during this period, Taylor stated that she did not because "there was nobody that [she] could talk to."

Taylor makes two final allegations of sexual harassment, both occurring in September 2017. First, on September 10, 2017, Hardy texted Taylor: "You did not want me to go [on a trip] because you knew you would be a bad girl . . . You may deny it but you know what probably would have happened . . . It is all good and may never happen . . . I want it but you are so hesitant." Then, on September 20, 2017, Hardy texted Taylor: "I made you show a side you did not want to and I regret that . . . Crying and hurting you . . . The last I want to do is hurt you. Just because I can't get what I want should not be a reason to be mean to you."

By October 2017, Taylor was no longer speaking to Hardy, save for work-related conversations. As a result, Taylor testified that Hardy approached her and threatened to terminate her employment in EEO if she

did not agree to his advances. To this end, Hardy asked the EEO office for a list of vacant positions and gave those positions to Taylor.

Ultimately, Taylor was relocated back to MAS on October 31, 2017. However, the chronology of events leading up to Taylor's relocation is disputed and somewhat inconsistent. For example, Taylor testified during her deposition that she met with her friend and coworker, Kimberly Booker, and Human Resources Manager Constance Ceasar on October 23, 2017, at a restaurant in Biloxi, Mississippi. During the meeting, Taylor claims she spoke to Booker and Ceasar about Hardy's conduct for the first time, although she states that she "did not verbally come out and say what happened." But, in her email to Ceasar dated November 17, 2017, Taylor states that she told EEO Counselor Stacy Porter that she never spoke to "anyone else" about Hardy's conduct until she made a formal complaint on October 30, 2017, and did not reference her conversations with Booker or Ceasar.

In any event, however, there is no allegation that Hardy was the one to *actually* make the decision to relocate Taylor. Rather, that decision was initiated by Ceasar upon Taylor's request and confirmed by Porter. In fact, on November 2 and 3, after learning that Taylor had been moved to MAS, Hardy emailed Taylor asking her who authorized the transfer, and he attempted to reverse the authorization by threatening to "AWOL" Taylor if she did not return.

Moreover, the parties agree that, on October 24, 2017, Taylor made an anonymous, informal complaint regarding Hardy's alleged harassment to the Office of Resolution Management. The parties also agree, as referenced above, that Taylor submitted a formal complaint against Hardy on October 30, 2017. In addition to this complaint, Taylor contacted Ceasar and EEO Counselor Mary Sloan multiple times requesting to be relocated because of

No. 23-60106

Hardy's harassment. Additionally, the parties agree that Taylor was moved from the EEO office and temporarily reassigned to the MAS office one day after she filed her formal complaint, and that an investigation into Hardy's conduct was immediately launched. Taylor did not see Hardy again at any point after Tuesday, October 31, 2017, even though she was made to briefly return to the EEO office on Friday, November 3, 2017, when Hardy was not in the office.[1] Additionally, Taylor testified that between March 2017 and October 2017—the period of her harassment—she did not suffer any demotion, discipline, reduction in pay, or change in benefits at work.

Taylor retained her temporary MAS position until its expiration in April 2018. Taylor did apply for a permanent MAS position but was ultimately not selected. Thus, Taylor asked and was returned to her old EEO position after Hardy's exit. Taylor stayed in the EEO position until May 2019, when she voluntarily moved to a new position in Tuscaloosa, Alabama.

As for Hardy, the VA first temporarily reassigned him as a result of Taylor's claims. Ultimately, in December 2017, the agency prepared a notice of proposed removal for conduct unbecoming of a federal employee. Hardy resigned in lieu of termination. Additionally, after their investigation concluded, the VA awarded Taylor $12,675.97 in compensatory damages and $79,312.50 in attorney's fees.

Consistent with her right to file a civil action in addition to her agency action, Taylor initiated this lawsuit in district court, on September 13, 2021, against Defendant Denis McDonough, the VA Secretary. Taylor brought claims for sexual harassment under Title VII of the Civil Rights Act of 1964,

---

[1] Taylor was there for one day, having previously arranged to take leave on Monday, November 6. Upon returning to work on Tuesday, November 7, she reported to the MAS office.

42 U.S.C. § 2000e *et seq.* On September 30, 2022, the VA moved for summary judgment, which the district court granted on February 3, 2023. Taylor timely appealed.

## II.

We review grants of summary judgment *de novo*, applying the same standard on appeal that was applied by the district court. *See McCarty v. Hillstone Rest. Grp., Inc.*, 864 F.3d 354, 357 (5th Cir. 2017). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute as to a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). In reviewing the record, the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh evidence. *Id.*

However, summary judgment cannot be defeated with "conclus[ory] allegations, unsupported assertions, or presentation of only a scintilla of evidence." *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012). Instead, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). We will grant summary judgment when "critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Armstrong v. City of Dallas*, 997 F.2d 62, 67 (5th Cir. 1993).

## III.

Taylor's appeal presents three issues: (A) whether Taylor's allegations of harassment occurring between April 2017 to August 2017 are time-barred; (B) whether the district court correctly determined that Taylor

did not suffer a "tangible employment action"; and (C) whether the district court correctly determined that the VA is entitled to the *Ellerth/Faragher* affirmative defense. We address each issue in turn.

### A.

Prior to filing suit against his or her employer in court for discrimination under Title VII, a federal civil servant "must first exhaust his administrative remedies." *Green v. Brennan*, 578 U.S. 547, 552–53 (2016); 42 U.S.C. § 2000e-16(c). To exhaust those remedies, the federal employee must first "initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." *Green*, 578 U.S. at 553 (quoting 29 C.F.R. § 1614.105(a)(1)). "Failure to notify the EEO counselor in timely fashion may bar a claim, absent a defense of waiver, estoppel, or equitable tolling." *Pacheco v. Rice*, 966 F.2d 904, 905 (5th Cir. 1992); *see also Baker v. McHugh*, 672 F. App'x 357, 361 (5th Cir. 2016).

Taylor's earliest report to the Office of Resolution Management was the one made anonymously on October 24, 2017. Therefore, it is undisputed that all of Taylor's allegations of sexual harassment are untimely on their face, with the exceptions being the September 10, 2017, and September 20, 2017, text messages from Hardy. However, Taylor argues on appeal that the VA waived the forty-five-day timeliness requirement relative to the harassment occurring between April and August 2017.

This court has held that "the docketing and acting on a complaint or request for reconsideration does not alone constitute a waiver of the timeliness objection." *Reveles v. Napolitano*, 595 F. App'x 321, 325 (5th Cir. 2014) (citing *Rowe v. Sullivan*, 967 F.2d 186, 191 (5th Cir. 1992), and *Oaxaca v. Roscoe*, 641 F.2d 386, 390 (5th Cir. 1981)). Rather, "to waive a timeliness objection, the agency *must make a specific finding* that the claimant's

submission was timely." *Rowe*, 967 F.2d at 191 (emphasis added); *Werner v. Dep't of Homeland Sec.*, 441 F. App'x 246, 249 (5th Cir. 2011). In fact, even a "statement that a request for reconsideration is timely does not suffice 'because agencies may inadvertently overlook timeliness problems and should not thereafter be bound.'" *Rowe*, 967 F.2d at 191 (quoting *Henderson v. U.S. Veterans Admin.*, 790 F.2d 436, 441 (5th Cir. 1986)).

Here, the VA never made any specific finding that Taylor's October 24, 2017, contact with an EEO counselor was timely. The VA merely accepted, docketed, and investigated Taylor's case, and ultimately awarded Taylor attorney's fees and compensatory damages. Taylor does not convincingly argue that the VA's actions were anything more than "docketing and acting" on her complaint, which, by themselves, are insufficient to waive a timeliness objection.[2] *See Reveles*, 595 F. App'x at 325; *Rowe*, 967 F.2d at 191. Accordingly, the district court correctly determined that all of Taylor's allegations—with the exception of the September 10, 2017, and September 20, 2017, text messages from Hardy—are time-barred.

**B.**

We now turn to Taylor's non-time-barred claims. In companion cases *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998), and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998), the Supreme Court provided the appellate courts with a clear road map for deciding supervisor sexual harassment cases under Title VII. Under the *Ellerth/Faragher* framework, courts first

---

[2] Taylor provides no authority supporting her contention that a payment of attorney's fees or damages constitutes an automatic waiver of the timeliness objection. In fact, such an argument directly conflicts with the principle that an agency may not inadvertently waive a timeliness objection, and instead "must make a specific finding" that a claim is timely to waive any objection. *See Rowe*, 967 F.2d at 191; *Werner*, 441 F. App'x at 249; *Reveles*, 595 F. App'x at 325.

determine whether the complaining employee has or has not suffered a "tangible employment action." *Casiano v. AT&T Corp.*, 213 F.3d 278, 283 (5th Cir. 2000) (quoting *Ellerth*, 524 U.S. at 761–62). If the court finds that the employee *has* suffered such an action, her suit is classified as a "*quid pro quo*" case; if not, it is classified as a "hostile work environment" case. *See id.* at 283–84. In a way, this creates a "fork in the road" on the *Ellerth/Faragher* road map.

When a case is classified as *quid pro quo*, affirmative defenses are unavailable, and an employer is *per se* vicariously liable for a supervisor's harassment if the plaintiff proves that "the tangible employment action suffered by the employee resulted from his acceptance or rejection of his supervisor's alleged sexual harassment." *Id.* On the other hand, when a case is classified as a hostile work environment case—i.e., there was no "tangible employment action"—the court must ask a different question: "[W]ould the actions ascribed to the supervisor by the employee constitute severe or pervasive sexual harassment?" *Id.* at 284. If the actions were *not* "severe or pervasive," there is no vicarious liability. *Id.* But, if the actions *were* "severe or pervasive," the employer is vicariously liable *unless* the employer can satisfy both prongs of the *Ellerth/Faragher* affirmative defense. *Id.* Specifically, the employer is not vicariously liable if it proves that (1) the employer exercised reasonable care to prevent and correct promptly any such sexual harassment; and (2) the employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer to avoid the harm otherwise.[3] *Id.* This is the only affirmative

---

[3] "[L]est our verbal exposition of the methodology mandated by the Supreme Court in those two cases be less than pellucid," we point to the *Casiano* court's helpful graphic representation of the described procedure. *See Casiano*, 213 F.3d at 283 & n.5, 288.

defense available to an employer in a supervisor sexual harassment case post *Ellerth/Faragher*. *Id.*

Here, the parties do not dispute that Hardy, Taylor's supervisor, engaged in conduct that meets the criteria of sexual harassment. Rather, the VA argues—and the district court held—that Taylor's claims are properly classified as hostile work environment claims and are defeated by the *Ellerth/Faragher* affirmative defense. Accordingly, we must first decide whether Taylor suffered a "tangible employment action," before analyzing whether the *Ellerth/Faragher* defense is available to the VA.

In *Ellerth*, the Supreme Court defined a "tangible employment action" as "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." 524 U.S. at 761. It occurs when "*the supervisor* brings the official power of the enterprise to bear on subordinates." *Id.* at 762 (emphasis added).

Here, Taylor has not shown that *Hardy* imposed upon her any action that could be characterized as a tangible employment action. As the district court noted, Taylor herself requested the transfer to MAS by contacting Ceasar, and Ceasar, not Hardy, initially authorized the transfer. That transfer was then confirmed by Porter, not Hardy. Taylor argues that Hardy's requested list of potential other jobs establishes a "causal" connection to Ceasar's and Porter's actions. Even viewing the evidence in the light most favorable to Taylor, we disagree. Hardy never *actually* terminated or relocated Taylor using that list. In fact, Ceasar herself admitted that "the list of open positions [that Hardy requested] did not have anything to do per se with [Taylor] being moved to MAS." Hardy even insisted that Taylor return to EEO after she was reassigned and that he did not want her transferred to MAS. Thus, there is insufficient evidence that Hardy, the harasser, took a

tangible employment action against Taylor because she rejected his sexual advances. *See Casiano*, 213 F.3d at 284–85 (finding no tangible employment action when an employee was denied access to a training program because another manager, not the harassing supervisor, was responsible for the decision); *Russell v. Univ. of Tex. of Permian Basin*, 234 F. App'x 195, 201–02 (5th Cir. 2007); *see also Durkin v. City of Chicago*, 341 F.3d 606, 611 (7th Cir. 2003) ("When a supervisor engages in sexual harassment, the employer is liable for the harassment *only if the harasser* took a tangible employment action as part of his harassment.").

Hardy's threats to "AWOL" Taylor—in the absence of Hardy actually reporting Taylor as "AWOL"—are also insufficient establish a tangible employment action. *See Ellerth*, 542 U.S. at 762 ("A tangible employment decision requires an official act of the enterprise, a company act."); *see also Ross v. Wald Moving & Storage Servs., Inc.*, 193 F.3d 516, 1999 WL 706057, at *4 (5th Cir. 1999); *Jin v. Metro. Life Ins.*, 310 F.3d 84, 97 (2nd Cir. 2002) ("[I]f [plaintiff] initially resisted [the harassment] and [the harasser] did not follow through with his threat of termination, then that threat would not qualify as a tangible employment action."); *May v. Autozone Stores, Inc.*, 179 F. Supp. 2d 682, 685–86 (N.D. Miss. 2001) ("The Supreme Court has recognized a distinction in Title VII sexual harassment cases between those based on threats *that are carried out* (often referred to as quid pro quo cases) and those where bothersome attentions or sexual remarks create a hostile work environment." (emphasis added)). And, in any event, by that time, Taylor had already filed a formal complaint and had requested reassignment. Accordingly, we find that Taylor did not suffer a "tangible employment action" at the hands of Hardy, and, as a result, that her claim is properly analyzed as a "hostile work environment" claim.

## C.

Because the VA does not appear to address or dispute the severity or pervasiveness of Hardy's discrimination, we, like the district court, assume that Taylor presented sufficient evidence of a hostile work environment. Accordingly, our final step is to decide whether Taylor's claims are defeated by the *Ellerth/Faragher* affirmative defense. We hold that they are.

Under the *Ellerth/Faragher* affirmative defense, an employer is not vicariously liable for sexual harassment if it proves that (1) the employer exercised reasonable care to prevent and correct promptly any such sexual harassment; and (2) that the employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer to avoid the harm otherwise. *See Casiano*, 213 F.3d at 284.

Here, construing the record in favor of Taylor, the summary judgment evidence indicates that the VA exercised reasonable care to promptly correct Hardy's harassment. Although Taylor argues that "[n]o one in the reporting chain knew how to address a sexual harassment complaint against William Hardy" because he was the EEO Program Manager, it is undisputed that the VA commenced an investigation into Hardy's conduct one day after Taylor filed her formal complaint on October 31, 2017.

It is also undisputed that Hardy was reassigned in December 2017, and, at the end of that month, was permitted to resign in lieu of termination. Thus, although Taylor did not officially commence her MAS position until Tuesday, November 7, 2017, she had no "in person" or verbal interaction with Hardy after Tuesday, October 31, 2017. And, when her temporary MAS position expired in April 2018, she returned, at her request, to the EEO office. Finally, as noted above, there is inconsistency in the record about whether Taylor first reported Hardy's harassment on October 30, or during her informal meeting with Ceasar and Booker on October 23. However, as

the district court stated, even crediting the earlier of the two dates, this court has held that a one-week delay in remedial action is reasonable under the first prong of *Ellerth/Faragher*. *See Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 260–61, 265 (5th Cir. 1999) (calling "prompt" an agency's one-week delay in starting investigation into sexual harassment and one-month delay in issuing discipline); *see also Casiano*, 213 F.3d at 280–83, 286–88. Therefore, the district court correctly concluded that the VA met the first prong of the *Ellerth/Faragher* defense.

The summary judgment evidence also shows that, prior to her October 2017 complaint, Taylor unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer to avoid the harm otherwise. Taylor does not dispute her knowledge of the VA's preventative and corrective sexual harassment policies. In fact, as part of her job, she discussed these policies with other employees. Nor does she dispute that she waited more than six months to report her allegations to the VA. "[W]hile proof that an employee failed to fulfill the corresponding obligation of reasonable care to avoid harm is not limited to showing an unreasonable failure to use any complaint procedure provided by the employer, a demonstration of such failure will normally suffice to satisfy the employer's burden under the second element of the defense." *Faragher*, 524 U.S. at 807–08.

Taylor attempts to argue that her delay was caused by a fear of retaliation or inaction if she reported the allegations any sooner. However:

> All harassment victims risk retaliation when they complain. For Title VII to be properly facilitated, the reasons for not complaining about harassment should be substantial and based upon objective evidence that some significant retaliation will take place. For example, a plaintiff may bring forward evidence

of prior unresponsive action by the company or management to actual complaints.

*Harper v. City of Jackson Mun. Sch. Dist.*, 149 F. App'x 295, 302 (5th Cir. 2005) (quoting *Young v. R.R. Morrison & Son, Inc.*, 159 F. Supp. 2d 921, 927 (N.D. Miss. 2000)). Here, Taylor states that "Mr. Hardy would joke about how he had EEO complaints filed against him and how he was able to dismiss them," and that "he joked about how he had the police called on him more than once and nothing was done to him." However, Taylor provides no *objective* evidence of prior retaliation, inaction, or dismissiveness regarding "actual complaints" made to the VA. The only evidence that comes close is Taylor's testimony that Hardy himself once asked an EEO manager to mediate an EEO complaint involving another employee, but this singular instance is insufficient to reach the level of "substantial," "objective evidence," especially when there is no evidence on the record about what the outcome in that case was. In short, Taylor's *subjective* fears of retaliation are insufficient to overcome the second prong of the *Ellerth/Faragher* defense. Thus, Taylor's claims are defeated as a matter of law.

## IV.

Finding no error in the district court's dismissal of Taylor's discrimination claims, we AFFIRM.